# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

BOARDWALK APARTMENTS, L.C., )
)
Plaintiff, )
)
v. ) Case No. 11-2714-JAR-KMH
)
STATE AUTO PROPERTY AND )
CASUALTY INSURANCE COMPANY, )
)
Defendant. )
_____)

## MEMORANDUM AND ORDER

On December 30, 2011, Plaintiff Boardwalk Apartments, L.C., filed a breach of contract claim against Defendant State Auto Property and Casualty Insurance Co., alleging that Defendant failed to pay Plaintiff's business income loss resulting from a fire that destroyed one of Plaintiff's apartment buildings ("Business Income Claim"), as required by Plaintiff's insurance policy with Defendant. Defendant answered Plaintiff's Complaint on February 27, 2012, asserting affirmative defenses. After a long procedural history, including three efforts by Defendant to file an amended answer, Plaintiff filed an Amended Complaint in October 2012, adding a replacement cost claim and a claim for business personal property lost in the October 2005 fire. After Plaintiff filed its Amended Complaint, Defendant filed a new Answer and Counterclaim (Doc. 57), and Plaintiff filed a Motion to Dismiss Counts III and IV of Defendant's Counterclaim and Motion to Strike Defendant's Fifth Affirmative Defense (Doc. 63). The court granted the motion on March 12, 2013 (Doc. 103), and Defendant then filed a Second Amended Answer to Complaint and Counterclaims on May 15, 2013 (Doc. 126). Currently before the Court is Plaintiff's Partial Motion to Dismiss Defendant's Second Amended

Counterclaim and Motion to Strike Certain Defenses (Doc. 127).  Plaintiff argues that Defendant's second and sixteenth through twenty-first affirmative defenses are insufficient, under Fed. R. Civ. P. 12(f), and that counts VI through XI of Defendant's counterclaim fail to state a plausible claim as required by Fed. R. Civ. P. 8(a) and so should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).  The motion is fully briefed and the Court is prepared to rule.  As described more fully below, the Court grants Plaintiff's motion, striking Defendant's second and sixteenth through twenty-first affirmative defenses and dismissing counts VI through XI of Defendant's counterclaim.

**I.     Legal Standard**

The Court analyzes a motion to strike an affirmative defense pursuant to Rule 12(f). Under Rule 12(f), a court "may strike from a pleading an insufficient defense." "Within the meaning of Rule 12(f), a defense is insufficient if it cannot succeed, as a matter of law, under any circumstances."[1]  To warrant striking a defense, its insufficiency must be "clearly apparent" and "no factual issues exist that should be determined in a hearing on the merits."[2]  Rule 12(f) is intended to minimize delay, prejudice and confusion by narrowing the issues for discovery and trial.[3]  "[T]he decision to grant a motion to strike is within the discretion of the court.  If the defense is clearly insufficient as a matter of law, it should be stricken."[4]

The Court analyzes a motion to dismiss counterclaims pursuant to Rule 12(b)(6), which

---

[1] *Layne Christensen Co. v. Bro–Tech Corp.*, No. 09–2381-JWL-GLR, 2011 WL 3847076, at *6 (D. Kan. Aug. 29, 2011).

[2] *Hayne v. Green Ford Sales, Inc.*, 263 F.R.D. 647, 649 (D. Kan. 2009).

[3] *Resolution Trust Corp. v. Fleischer*, 835 F. Supp. 1318, 1320 (D. Kan.1993).

[4] *Resolution Trust Corp. v. Scaletty*, 810 F. Supp. 1505, 1515 (D. Kan. 1992).

provides a vehicle for a party to challenge the legal sufficiency of a counterclaim. The requirements underlying the legal sufficiency of a counterclaim stem from Rule 8(a), which requires that a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[5] The claim must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level" and contain "enough facts to state a claim to relief that is plausible on its face."[6] "[T]he complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[7] The plausibility standard does not require a showing of probability that a defendant has acted unlawfully, but requires more than "a sheer possibility."[8] "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."[9] Finally, the Court must accept the nonmoving party's factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[10]

The Supreme Court has explained the analysis as a two-step process. For the purposes of a motion to dismiss, the court "must take all the factual allegations in the complaint as true, [but] we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"[11] Thus,

---

[5]Fed. R. Civ. P. 8(a).

[6]*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

[7]*Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[8]*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[9]*Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

[10]*Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[11]*Id.*

the court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth.[12] Second, the court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[13]

## II.  Factual Background

To review the factual background, on October 7, 2005, an apartment building in the Boardwalk complex was destroyed by fire. Between November 2, 2005 and February 24, 2006 Defendant, who provided insurance coverage for the building and for associated business income, paid to Plaintiff in excess of $2,416,658, including $2,128,794.17 as indemnity for Building 1 and $150,000 for Plaintiff's anticipated business income losses. Defendant believed that it had fulfilled its obligation under the Policy, at least with respect to the insured building. Defendant initiated a lawsuit on March 27, 2006, in the United States District Court for the Western District of Missouri,[14] seeking a determination concerning its rights and obligations under the insurance policy. Plaintiff filed a counterclaim in that case.[15] Plaintiff did not begin construction of its building during the suit, because it did not know whether Defendant would pay the replacement cost or a lesser valuation. In April 2008, the parties entered into an Agreed Stipulation of Dismissal Without Prejudice, under which they agreed that

> Boardwalk has the right to replace Building #1 based on the

---

[12]*Id.* at 679.

[13]*Id.*

[14]*State Auto Prop. & Cas. Ins. Co. v. Boardwalk Apartments, L. C.*, No. 06-00252, 2008 WL 474333 (W.D. Mo. Feb. 15, 2008).

[15]*Id.*, Answer and Counterclaim.

4

> condition that, within six months of the Court's Orders, including any appeals thereof, becoming final, Boardwalk has initiated the process of replacing the destroyed building by formally seeking municipal approval thereof and thereafter proceeds diligently to replace such building.[16]

Plaintiff appealed several of the orders entered in the Western District of Missouri Case, and, following action by the Eighth Circuit Court of Appeals, the orders in the Western District of Missouri Case became final on September 8, 2009. Defendant admits that it received a letter from Boardwalk's counsel, dated January 26, 2010, indicating that it anticipated filing an application for a building permit in mid-February 2010. Plaintiff informed Defendant that the replacement building was completed as of July 22, 2011. Based on these facts, Plaintiffs made a claim for business income damages from the time of the fire to the date that normal business operations resumed.

Defendant alleges several additional facts relevant to the present motion. These facts are treated as true for the purposes of the present motion. Defendant alleges that Plaintiff invested at least some of the $2,128,794.17 it received as indemnity for Building 1 to generate a return on investment. These investments included: (1) a loan in the principal amount of $180,000 Plaintiff made to Creative Candles, LLC on or about September 1, 2006, which still has an unpaid principal balance; (2) bonds purchased through Commerce Bank's Capital Markets Group on or about March 2, 2006, which bonds were sold by Plaintiff on or about June 30, 2006, September 6, 2006, January 23, 2007, and February 8, 2007; and (3) a loan in the principal amount of $1,006,721.35 Plaintiff made to Park Place Apartments, L.C. on or about January 17, 2007, which loan remained unpaid at the end of 2007, 2008, 2009, and 2010.

---

[16]Doc. 36-3 at 1–2.

Defendant alleges that, on or about July 30, 2010, Plaintiff sent a written request to one of State Auto's attorneys in St. Louis, Missouri, for State Auto to process Boardwalk's business income claim. Defendant requested information from Plaintiff in order to process Plaintiff's business income claim, including Plaintiff's complete federal income tax returns for 2004, 2005, 2006, and 2007. Plaintiff's counsel sent copies of Boardwalk's 2004, 2005, 2006, 2007, 2008, and 2009 federal income tax returns both in support Boardwalk's business income claim and in response to Defendant's request for information. In August 2011, Defendant again asked for Plaintiff's complete federal income tax returns for 2004, 2005, 2006, and 2007, and Plaintiff again sent copies of Boardwalk's 2004, 2005, 2006, 2007, 2008, and 2009 federal income tax returns.

Defendant alleges that the federal income tax returns did not truly, correctly, and completely reflect, include, disclose or account for (1) the $2,128,794.17 paid to Boardwalk by State Auto as indemnity for Building 1; (2) the investments, deposits and/or distributions Boardwalk made with the $2,128,794.17; or (3) the "return on investment" (i.e., income or gains) Boardwalk derived from investing or depositing the $2,128,794.17. Defendant also argues that
Plaintiff's 2006, 2007, and 2008 federal income tax returns do not truly, correctly, and completely reflect, disclose or state that Building 1 was no longer tenantable, in that Boardwalk continued to take the full amount of depreciation for Building 1 even after it was rendered untenantable by the October 7, 2005 fire.

Defendant alleges that, at the time Plaintiff's officers approved the submission and delivery of Boardwalk's 2004, 2005, 2006, 2007, 2008, and 2009 federal income tax returns to

6

Defendant in support of Boardwalk's business income claim, the federal income tax returns (or some of them) contained inaccurate, incomplete, and false information concerning Boardwalk's finances, especially Plaintiff's investments and income.

## II. Analysis

### A. *Defendant's Second Affirmative Defense*

The Court will strike Defendant's second affirmative defense under Rule 12(f) because it is legally insufficient. The second affirmative defense states that Plaintiff's action is time-barred because it was not initiated within five years of the fire, as required by the insurance contract. But Defendant moved for judgment on the pleadings in August 2012, relying on the same five-year time limitation.[17] The Court denied State Auto's motion, stating clearly that "Defendant is equitably estopped from asserting that the current suit was filed out of time."[18] Defendant moved for reconsideration, and the Court reiterated its initial decision. The factual assertions related to this claim have not changed, and so the Court will stand by its prior ruling. The Court strikes Defendant's second affirmative defense.

### B. *Defendant's Sixteenth through Twenty-first Affirmative Defenses and Counts VI through XI of Defenant's Counterclaims*

The Court will also strike Defendant's sixteenth through twenty-first affirmative defenses, under Fed. R. Civ. P. 12(f), because they are legally insufficient, and will dismiss counts VI through XI of Defendant's counterclaim under Rule 12(b)(6) because they do not state plausible claims.

---

[17]Docs. 40, 41.

[18]Doc. 51.

Defendant's affirmative defenses argue that Plaintiff breached the insurance policy provision addressing concealment, misrepresentation, or fraud by misrepresenting a material fact, concealing a material fact, or committing fraud when submitting its Business Income Claim. Counts VI through XI of Defendant's counterclaim make essentially the same arguments. The Court examines the affirmative defenses and the counterclaims together, because all of the arguments rely on the same alleged facts; these facts are legally insufficient to support an allegation of fraud, concealment, or misrepresentation.

As the Court noted in its last order dismissing several of Defendant's counterclaims and striking several of Defendant's affirmative defenses, in a typical insurance fraud claim, the insured misrepresents or conceals a material fact, a fact which the insurer does not know. With respect to the present motion, Defendant knew about its own payments to Plaintiff in 2006 and knew, based on a deposition it conducted in the Missouri litigation, that Plaintiff had invested the 2006 payments. Thus Defendant was aware, when it received the tax returns, that Plaintiff had received funds and had invested them. Even assuming that the tax returns do not accurately reflect Plaintiff's finances, Defendant in essence claims that Plaintiff's tax returns did not contain the information of which Defendant was already aware. Defendant argues that it did not know details concerning the investments, details which were necessary to process the claim, but the tax return examples accompanying the filings show that the filings themselves, even if they were altered to reflect the investments and payments at issue, would not provide sufficient detail for the insurer to resolve the claim. Based on the facts as alleged by the Defendant, and on the public documents submitted with Plaintiff's filings, the Court finds that the factual allegations, when assumed true, do not plausibly give rise to a finding that Plaintiff submitted the tax returns

8

with the intent to deceive or with reckless disregard for the truth, as required for these affirmative defenses and counterclaims, because Defendant already knew the "truth" it alleges Plaintiff was intentionally or recklessly failing to disclose. The alleged failure to submit complete tax returns did not conceal any information that was not already known to Defendant.

Further, because the tax returns, if complete, would not have contained the information Defendant required to process the claims, any alleged omission was not material, as required for all counterclaims and for the affirmative defenses.

For these reasons, Defendant cannot state an affirmative defense based on a policy breach through concealment, misrepresentation, or fraud. Further, Defendant cannot make a successful counterclaim relying on concealment, misrepresentation, or fraud. The counterclaims do not state a plausible claim, and the affirmative defense is clearly insufficient as a matter of law. Thus, the Court strikes Defendant's sixteenth through twenty-first affirmative defenses and dismisses counts VI through XI of Defendant's counterclaim.

**IT IS THEREFORE ORDERED THAT** Plaintiff's Partial Motion to Dismiss Defendant's Second Amended Counterclaim and Motion to Strike Certain Defenses (Doc. 127). is GRANTED.

**IT IS SO ORDERED**.

Dated: August 23, 2013

                                                    S/ Julie A. Robinson
                                                    JULIE A. ROBINSON
                                                    UNITED STATES DISTRICT JUDGE