IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BOARDWALK APARTMENTS, LLC, )
)
       Plaintiff, )
)
v. ) Case No. 11-2714-JAR
)
STATE AUTO PROPERTY AND )
CASUALTY INSURANCE CO., )
)
       Defendant, )
)
_____)

## MEMORANDUM AND ORDER

This matter is before the court on plaintiff's renewed motion to compel (Doc. 155). For the reasons set forth below, the motion shall be **GRANTED**.

### Background

This is an action to collect on a commercial property insurance policy issued by defendant for plaintiff's apartment complex in Lawrence, Kansas. Plaintiff alleges that one building in its apartment complex was totally destroyed by fire on October 7, 2005 and that defendant breached the insurance contract by failing to pay plaintiff's lost business income and the full replacement cost of the building. Plaintiff also alleges that defendant engaged in misrepresentation and negligence while processing plaintiff's insurance claim. Because the parties are familiar with the facts and procedural nature of

this case as set forth in previous opinions,[1] the court's discussion is limited to the issues pertinent to the rulings which follow.

Plaintiff previously filed a motion to compel (Doc. 86) which was granted on April 18, 2013 (Doc. 111). Defendant's "policies and practices" concerning its investigation, evaluation, and adjustment of property loss or replacement cost claims were found to be relevant to the plaintiff's claims and were ordered to be produced. Defendant was also ordered to produce its complete claims file and/or a privilege log setting forth any information withheld based on attorney-client privilege and/or work product doctrine.

**Plaintiff's Renewed Motion to Compel (Doc. 155)**

Plaintiff's current motion concerns the sufficiency of the documents produced by defendant in response to the court's order. Defendant timely produced excerpts from its claims manual and a privilege log listing 78 documents withheld from the claims file on the basis of attorney-client privilege and/or work product doctrine. Plaintiff objected to the adequacy of that production. After multiple discussions between the parties, defendant later produced additional materials, including documents previously withheld based on privilege, and twice provided amended privilege logs. Despite their efforts to resolve the dispute, the parties still disagree on the sufficiency of defendant's production.

At issue are three categories of documents: (1) specific sections of defendant's claims manual; (2) documents and communications withheld from defendant's claims file

---

[1] *See* Memorandum and Order (Doc. 111).

on the basis of privilege/work product doctrine; and (3) information regarding defendant's loss reserves. Each category will be addressed in turn.

I. **Claims Manual Materials**

The court ordered defendant to identify its "practices, policies, manuals, standards or procedures related to property loss or business interruption claims" and to produce documents related to its "policies and practices" regarding investigation, evaluation, and adjustment of property loss or replacement cost claims.[2] Defendant withheld several sections of its claims manual, arguing that those sections were outside the scope of plaintiff's original requests and therefore outside the scope of the court's previous order.

The withheld sections contain three whose titles suggest a relationship to claims handling.[3] They are entitled: "Workflow, Processing and Claim File Organization;" "File Supervision, Instruction and Overdiary;" and "Claim File Authority and Responsibility." Other sections withheld are titled "Reserving our Rights;" "Coverage Denials;" and "Reserving Property Claims."

Defendant asserts that the internal handling of a claims file is "wholly irrelevant" to plaintiff's claims and outside the scope of plaintiff's requests. The court disagrees. Proper management of the claims file is a fundamental part of investigation, evaluation and adjustment. Even defendant notes that these are internal polices related to "general

---

[2] *See* plaintiff's Interrogatory No. 12 and Requests for Production Nos. 11, 12, and 13 as discussed in the court's previous order (Doc. 111).
[3] These categories are provided by defendant in its briefing (Resp., Doc. 165).

3

handling of State Auto's claims file."[4] Plaintiff has specifically asserted a claim for negligent claim handling.[5] Plaintiff's negligence claim will necessarily include plaintiff's attempt to prove that defendant breached its duty of care in handling plaintiff's claim; therefore, the internal polices of defendant in handling that file are directly relevant and must be produced.

Defendant contends that "Reserving Our Rights" has "nothing to do" with the investigation, evaluation or adjustment of plaintiff's claims and "merely addresses internal company policies."[6] Defendant fails to recognize that the internal policies of the defendant are the specific subject of the previous motion and the court's order. Without specific evidence of why this particular policy ("Reserving Our Rights") lies outside the scope of the requests, defendant's argument is rejected.

Defendant argues that because it did not deny coverage in the instant case, the "Coverage Denials" section of the manual is non-responsive to plaintiff's request. The parties disagree as to whether coverage was actually denied for the purposes of this matter, but the merits of this argument need not be reached, and neither is it appropriate in this context. The denial *is*, in essence, an "evaluation" of a claim. It is difficult to understand why the procedures governing coverage denial are not applicable to the evaluation of a claim. Again, defendant fails to provide more than conclusory arguments and its objections are denied.

Defendant argues that the determination of reserves, governed by the section

---

[4] Def.'s Resp., Doc. 165 at 5.
[5] *See* Am. Compl., Doc. 53 at 15.
[6] Def.'s Resp., Doc. 165 at 5-6.

entitled "Reserving Property Claims," is irrelevant to plaintiff's claims, because it is not an investigation or evaluation of a specific claim. The determination of reserves and this section of the claims manual is discussed *infra* at Section III and the defendant's objections are overruled.

Neither party provided more than the titles of the sections of the manual for consideration. On their face, the sections of the claims manual appear relevant. Defendant produced no evidence or authority in support of its assertions that these sections of the claims manual were not responsive to plaintiff's requests or beyond the scope of the court's order. Moreover, the court ordered production of documents "*related to* defendant's 'policies and practices' concerning its investigation, evaluation, and adjustment of property loss or replacement cost claims." Defendant's attempt to narrow the focus of the ordered discovery is rejected. All requested sections of the claims manual must be produced as previously ordered.

**II.     Items Withheld from the Claims File on the Basis of Privilege**

Defendant was ordered to produce plaintiff's claims file in full. Any items withheld based on attorney-client privilege and/or work product doctrine were to be identified on a privilege log. Defendant timely produced its privilege log, but a number of documents which were either not produced, or produced with redactions, remain at issue. As noted in the most recent privilege log,[7] the redactions referenced in lines 5, 6, 7, 9, 10, 11, and 15 are at issue; and withheld documents referenced in lines 70-70d, 72-

---

[7] *See* Am. & Suppl. Privilege Log, Pl.'s Mot., Doc. 155, Ex. 3.

72a, 78a-78f, 79-79d, and 80-80a are also at issue.

The court first considers whether the attorney-client privilege or the work product doctrine protects any of the requested documents from discovery. As the party raising the privileges, the defendant has the burden of proving whether the attorney-client privilege or the work product doctrine apply. "More broadly, the party seeking to invoke these privileges must establish all elements of the privileges. This burden can be met only by an evidentiary showing based on competent evidence, and cannot be discharged by mere conclusory or ipse dixit assertions."[8] The court construes both privileges narrowly, and "general allegations of privilege are insufficient."[9]

Privilege log **lines 5, 6, and 7** involve interoffice communications between named individuals regarding "case analyses, risk and reserve information prepared in anticipation of litigation." These communications were produced in part, but the redacted information appears to relate to the establishment of reserves, which are discussed *infra* at Section III. Privilege log **lines 9 and 10** include a "Large Loss Report" and a "Special Investigative Report." **Line 15** again references the "Large Loss Report." Defendant fails to assert attorney involvement or to identify with particularity the individuals mentioned on the log for any of these entries. Without even an assertion of attorney involvement, defendant's claim of privilege as to information referenced in lines 5, 6, 7, 9, 10, and 15 is denied.

Privilege log **line 11** again reflects "interoffice communications," and plaintiff

---

[8] *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Midland Bancor, Inc.*, 159 F.R.D. 562, 567 (D. Kan. 1994) (internal citations omitted).
[9] *Id*.

6

includes the redacted document it its motion.[10] On its privilege log and in its response, defendant asserts attorney-client privilege, stating that the redactions contain advice given by an otherwise unidentified attorney, "Cassidy," and that the redactions include opinions, mental impressions, and/or advice concerning the claim. One sentence contains the sum of the evidence provided by defendant. This minimal and conclusory argument does not fulfill defendant's burden to offer specific evidence establishing every element of the privilege, and defendant's objection to line 11 is overruled.[11]

Privilege log **lines 70-70d and 79-79d**[12] reference interoffice communications occurring on October 4, 2011, for which defendant asserts work product protection. Privilege log **lines 72-72a and 80-80a**[13] reflect communications between defendant and a consulting company which occurred on November 21, 2011. Though not noted on the log itself, defendant asserts that these emails contain a forward of email communication from current counsel, Mr. Cockerham, along with discussions of his thoughts provided specifically in anticipation of litigation.

To establish the protection of the work product doctrine, defendant must show: (1) that the materials to be protected are documents or tangible things; (2) they were prepared in anticipation of litigation or for trial; and (3) they were prepared by or for a party or

---

[10] Doc. 155, Ex. 4, at 12.
[11] *See Midland Bancor*, 159 F.R.D. at 567.
[12] According to defendant, these lines reference identical communications which are duplicated on the privilege log.
[13] Defendant explains that these communications are duplicates of one another, and that the document shown on privilege log line 72b was the first communication in the email string from Mr. Cockerham. Lines 72 and 72a, and their duplicates, lines 80-80a, are emails containing a forward of Mr. Cockerham's email. (Def.'s Resp., Doc. 165, at 8.)

representative of that party.[14] It appears to be undisputed that the materials are documents or tangible things and that they were prepared by or for the defendant. The sole issue is whether the documents were prepared in anticipation of litigation.

The work product doctrine is "not intended to protect investigative work unless done so under the supervision of an attorney in preparation for the *real and imminent* threat of litigation or trial."[15] In order for the protection to apply, there must be "a substantial probability that litigation will ensue at the time the documents were drafted."[16] Plaintiff argues that because the communications occurred in October and November 2011, there has been no showing of "imminent" litigation, as the prior Missouri litigation had ended[17] and the instant litigation did not commence until December 30, 2011. Plaintiff provides proof in the form of correspondence between the parties that the replacement cost claim was not filed until November 18, 2011, and that the October 2011 communication even pre-dates the claim, so litigation could not have been "real and imminent." Defendant maintains that in its October 4, 2011 email from counsel the communication states specifically that "we fully anticipate [redacted list of issues] . . . will be litigated."[18]

The thorough discussions of the work-product doctrine in *Bunge* and in *Marten v. Yellow Freight* provide guidance.[19] Defendant briefly alludes to facts that might

---

[14] *U.S. Fire Ins. Co. v. Bunge North America, Inc.*, 247 F.R.D. 656, 657 (D. Kan. Dec. 20, 2007).
[15] *Id*. at 657.
[16] *Id*. at 657-58.
[17] *See* Pl.'s Am. Compl., Doc. 53 at 5 (noting that the federal judge in the Western District of Missouri entered final judgment on September 8, 2009).
[18] Def.'s Resp., Doc. 165, at 8.
[19] *See Bunge*, 247 F.R.D at 658; *see also Marten v. Yellow Freight System, Inc.*, 1998 WL 13244,

generally support its assertion of privilege, including: the idea that the Missouri litigation left open the potential for further litigation; involvement of defense counsel in communications referenced by lines 72-72a and 80-80a; and that the documents referenced in lines 70-70d and 79-79d specified that the defendant "fully anticipate[d]" litigation at the time of the document's creation only two-and-a-half months prior to the filing of this lawsuit.

However, defendant's burden cannot be met by mere conclusions.[20] Defendant is charged with providing the court a "clear showing," based on "competent evidence." In its motion, plaintiff provides legal authority and copies of all produced documents at issue to support its claims that none of the redacted or withheld items are privileged or protected by the work product doctrine. Other than conclusory statements, no evidence was presented in response which affords the court the opportunity to review whether documents are, in fact, privileged. Defendant provides no evidentiary showing, such as redacted documents, affidavits of those preparing the communications, or other evidence, upon which the court could provide a reasoned opinion. The only evidence provided by defendant is copies of correspondence between counsel, which aside from the May 23, 2013 letter from plaintiff's counsel, was previously considered by the court in its earlier ruling (Doc. 111). Not a single citation to authority is proffered by defendant. Defendant has not met its burden to provide a clear showing of competent evidence regarding lines 70-70d and 79-79d or lines 72-72a and 80-80a.

---

at *10 (D. Kan. Jan. 6, 1998).
[20] *See Bunge*, 247 F.R.D. at 658 (citing *McCoo v. Denny's, Inc.*, 192 F.R.D. 675, 683 (D. Kan. 2000)).

9

**Privilege log lines 78a-78f** reference an email chain between defendant and its expert consulting firm which occurred in March 2010. In the privilege log, defendant objects to production based upon the work product doctrine and relevance. In its response, defendant apparently abandons its work product objection and solely states that the information is simply "not discoverable under Rule 26(b)." In its three-sentence claim, defendant provides no evidence as to why its March 2010 communications between defendant employees and a third party, pre-suit, are protected from discovery. Defendant has not met its burden regarding documents referenced in privilege log lines 78a-78f.

Based on the foregoing, the documents referenced in privilege log lines 5, 6, 7, 9, 10, 11 and 15 must be produced without redactions. Likewise, the documents referenced in privilege log lines 70-70d, 72-72a, 78a-78f, 79-79d, and 80-80a, must be produced.

### III. Loss Reserve Information

Defendant refused to produce the section of its claims policy manual entitled "Reserving Property Claims" and redacted loss reserve information from six documents produced as part of its claims file. Defendant claims the reserve information is sensitive internal company material and is irrelevant to the lawsuit. Plaintiff argues that defendant has waived any such argument by not raising it in the briefing of the previous motion to compel, and that loss reserves are relevant to plaintiff's claims.

Neither party defines the term "reserves" in its briefing. Black's Law Dictionary defines "reserves" in part, as "a fund of money set aside by a bank or an insurance

company to cover future liabilities."[21]  Reserves are "sums of money an insurer is required to set aside as a fund for the liquidation of . . . claims accrued, but contingent and indefinite as to amount."[22]

Plaintiff cites *U.S. Fire Ins. Co. v. Bunge*[23] for its assertion that reserve information is relevant to its claims. In *Bunge*, the court surveyed cases from numerous districts on the topic.[24] The court found "it appropriate to determine relevancy of reserve information on a case-by-case basis by considering the claims and defenses pled, as well as any specific facts presented regarding why the insured believes the information is relevant and how the insurers in that particular case actually set reserves."[25]

Here, plaintiff's claims include negligent claims handling by defendant. On its face, reserve information is relevant because the timing or establishment of the reserve on plaintiff's claims could provide evidence regarding defendant's handling of the claims and any breach of that duty.[26] Review of defendant's broader reserve-setting procedures provides insight about whether defendant was following its own policies as well as statutory and regulatory requirements.

Because the information appears to be relevant on its face, defendant has the burden to establish the lack of relevance.[27] Defendant provides no authority to either

---

[21] *U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, 2007 WL 1531846, at *8, 68 Fed. R. Serv. 3d 134 aff'd, 244 F.R.D. 638 (D. Kan. May 25, 2007); Black's Law Dictionary (9th ed. 2009).
[22] Black's Law Dictionary 1307-08 (6th ed.1990).
[23] 2007 WL 1531846, at *9.
[24] *Id.* at *10, n. 36-37.
[25] *Id.*
[26] *Id.* at *9.
[27] *See id.*, at *8; *see also C.T. v. Liberal Sch. Dist.*, 2008 WL 394217, *3 (D. Kan. Feb. 11, 2008).

support its position or refute the authority asserted by plaintiff. Defendant also provides no specific facts regarding how it sets reserves or how doing so in this case is irrelevant.[28] Defendant's conclusory arguments do not satisfy its burden, and are therefore rejected. Defendant is ordered to produce the policy manual section "Reserving Property Claims" and to produce unredacted copies of the claims file documents 5, 6, 7, 9, 10, and 15 as listed on its amended and supplemented privilege log.

**IT IS THEREFORE ORDERED** that plaintiff's motion to compel (**Doc. 155**) is **GRANTED**, consistent with the rulings herein. No later than **September 18, 2013**, defendant shall provide all requested sections of the claims manual; the unredacted documents referenced in privilege log lines 5, 6, 7, 9, 10, 11 and 15; and the documents referenced in privilege log lines 70-70d, 72-72a, 78a-78f, 79-79d, and 80-80a.

The parties are reminded that this is the second time the court has had occasion to address the issues presented in plaintiff's original motion to compel (Doc. 86). Therefore, the parties are cautioned that future filings regarding these same issues may result in the imposition of sanctions authorized by Fed. R. Civ. P. 37(b)(2).

---

[28] *See Bunge*, 2007 WL 1531846, at *10 (noting the court considers "any *specific facts* presented regarding . . . how the insurers in that particular case actually set reserves." (emphasis added)).

**IT IS SO ORDERED.**

Dated at Wichita, Kansas this 5th day of September, 2013.

                                             S/ Karen M. Humphreys
                                             KAREN M. HUMPHREYS
                                             United States Magistrate Judge