IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| BOARDWALK APARTMENTS, L.C., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 11-2714-JAR |
| | ) | |
| STATE AUTO PROPERTY AND | ) | |
| CASUALTY INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

This insurance coverage action arose out of a 2005 fire at Boardwalk Apartments, L.C.'s ("Boardwalk") apartment complex in Lawrence, Kansas. Boardwalk was insured under a commercial property insurance policy issued by State Auto Property and Casualty Insurance Company ("State Auto"). The Policy's business income, replacement cost, and coinsurance provisions are at issue in this case, the second of two lawsuits filed to determine coverage disputes after the fire. The Court ruled on several matters on cross-motions for summary judgment, narrowing the issues to be decided at trial. Beginning on June 24, 2014, this case was tried to a jury. The jury returned verdicts in favor of Boardwalk on both breach of contract claims, calculating damages for each claim and finding consequential damages in the amount of $2,627,943. Now before the Court are post-trial motions: Boardwalk's Motion to Amend Judgment under Rule 59(e) to Award Prejudgment Interest (Doc. 353); State Auto's Motion for New Trial Pursuant to Rule 59(a) (Doc. 356); State Auto's Renewed Motion for Judgment as a Matter of Law (Doc. 360), and State Auto's Motion to Extend Time to Appeal the Judgment on

the Merits Pursuant to Rule 58(e) of the Federal Rules of Civil Procedure (Doc. 409).[1]  As

described more fully below, the Court grants in part and denies in part Boardwalk's motion for

prejudgment interest and denies State Auto's motions for relief under Rules 50(b), and 59(a).[2]

The Court grants State Auto's motion to extend the time to appeal under Rule 58(e).

## I.      Background

This dispute arises out of a fire that occurred on October 7, 2005, that destroyed Building

1, the largest building in the Boardwalk apartment complex.  On March 27, 2006, State Auto

filed a lawsuit against Boardwalk in the Western District of Missouri ("Missouri Litigation").  It

contended that the Kansas Valued Policy statute limited what it owed Boardwalk on the property

damage claim, and that coinsurance applied if it was determined that Boardwalk was entitled to

seek the replacement cost of Building 1.  The court granted partial summary judgment to

Boardwalk on whether it had a right to replace Building 1, and granted partial summary

judgment to State Auto on the issue of coinsurance: because the Kansas Valued Policy statute

did not apply to this claim, the coinsurance provision could apply to potentially reduce

Boardwalk's recovery of the replacement cost.  The court also ruled that the limitations on

reimbursement for extra costs incurred to comply with modern laws and ordinances was not void

against public policy.  The Eighth Circuit reversed on the law and ordinance issue, finding that

the limitations in the Policy were void as against public policy, and affirmed on all other issues.

The parties agree that the Missouri Litigation ended on September 8, 2009.

---

[1]The Court will consider Boardwalk's attorney fee request and related motions (Docs. 349, 411, 414) in a separate Memorandum and Order.

[2]In a separate Memorandum and Order filed today, the Court conditionally denied State Auto a new trial on consequential damages if Boardwalk accepts a remittitur.

Boardwalk contended in this lawsuit that State Auto breached the insurance contract because it has failed to pay the full amounts owed under the Policy, as construed in the Missouri Litigation.  Specifically, Boardwalk first contended that it was entitled to the cost to replace Building 1, without coinsurance, which Boardwalk argued at trial was $3,408,957.  State Auto argued that the coinsurance provision of the Policy applied because the complex was underinsured, which reduced its obligation to pay the full replacement cost and therefore Boardwalk was not entitled to any additional amounts under the terms of the Policy.

Second, Boardwalk contended it was entitled under the Policy to its lost rental business income, as well as additional damages resulting from State Auto's failure to pay what was owed to Boardwalk under the Policy.  State Auto asserted a counterclaim that Boardwalk is not entitled to any additional payments under the Policy because Boardwalk failed to cooperate with State Auto in the investigation of its claims.  State Auto further asserted that Boardwalk's actual business income losses are much lower than Boardwalk contended because Boardwalk should have replaced Building 1 more quickly than it did and because Boardwalk's business income claim must be reduced by the interest income Boardwalk earned on the prior indemnity payment during the time it took to replace Building 1.

Pretrial, there were several amendments to the pleadings.  State Auto attempted multiple times to add counterclaims and affirmative defenses based on fraud, misrepresentation, and concealment based on its contention that the documents provided to State Auto by Boardwalk in support of its business income claim were inaccurate or incomplete.  The Court granted Boardwalk's motions to strike or dismiss these claims.

The Court ruled on cross motions for summary judgment.  While neither breach of

contract claim was entirely disposed of, the Court's rulings substantially narrowed the questions to be determined by the jury at trial.  Among other things, the Court was called upon to construe the terms of the Policy in conjunction with the Eighth Circuit's ruling that the Policy limitations on the costs to comply with modern laws and ordinances were void as against public policy. Finding that the parties would not have bargained for the applicable Policy limit on property damages claims without the $10,000 cap on law and ordinance costs, the Court found that to determine whether the complex was underinsured depended on the value of the complex not including the cost of complying with modern laws and ordinances.  However, if the complex was determined to be underinsured, the Court found that the coinsurance percentage would apply to the value of Building 1, including costs to comply with modern laws and ordinances.

The Court also rendered several rulings relevant to calculating damages on the business income claim.  It ruled that: the "period of restoration" during which Boardwalk could recover damages was tolled during the Missouri litigation; depreciation is not a "saved expense"; and that interest actually earned by Boardwalk on the indemnity payment should offset its business income loss.  The Court denied Boardwalk's motion for summary judgment on the failure to cooperate counterclaim on the theory that Boardwalk failed to cooperate in the investigation of the business income claim.

The case proceeded to jury trial on June 24, 2014.  The jury returned a verdict in favor of Boardwalk on both breach of contract claims—for replacement cost coverage and for business income loss.  The verdict included a finding that the replacement cost of  Building 1 was $3,914,727.50, that the value of the complex was an amount that precluded application of the coinsurance provision, that Boardwalk sustained $2,627,943 in consequential damages, that the

4

Period of Restoration ended on August 21, 2011, that business income loss totaled $1,188,837.40, and that Boardwalk earned $99,706 in interest on the prior indemnity payment. The jury also found that Boardwalk did not fail to cooperate with State Auto during the investigation of its claims.

Based on the verdict, and after adjusting the damages awards for prior payments and deductibles, the Court entered Judgment in favor of Boardwalk and against State Auto on July 10, 2014, in the following amounts: (1) $939,131.44 on the business income claim; (2) $1,785,933.33 on the replacement cost claim; and (3) $2,627,943.00 in consequential damages.

## II.    Sufficiency of the Evidence

### A.    Standard

A court may grant a renewed motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b) if "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue."[3] "[A] party is entitled to judgment as a matter of law only if all of the evidence, viewed in the light most favorable to the nonmoving party, reveals no legally sufficient evidentiary basis to find for the nonmoving party."[4] "Judgment as a matter of law 'is warranted only if the evidence points but one way and is susceptible to no reasonable inferences to support the party opposing the motion.'"[5] The Court must consider all of the evidence in the record, construing it in the light most favorable to

---

[3]Fed. R. Civ. P. 50(a)(1).

[4]*Jones v. United Parcel Serv., Inc.*, 674 F.3d 1187, 1195 (10th Cir. 2012) (citing *Burrell v. Armijo*, 603 F.3d 825, 832 (10th Cir. 2010)).

[5]*Id.* (citing *Baty v. Willamette Indus., Inc.*, 172 F.3d 1232, 1241 (10th Cir. 1999)) (citation and quotation omitted).

5

the jury's verdict, and keeping in mind that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."[6]  If, after examining the evidence, the Court finds that the trial contained evidence upon which a jury could have properly returned a verdict against the movant, the Court must deny the motion for judgment as a matter of law.[7]

**B.     Discussion**

**1.     Replacement Cost of Building 1**

State Auto argues that the evidence does not support the jury's finding that the cost to replace Building 1 was $3,914,727.50.  It points to the Pretrial Order, and to other statements made during trial by Boardwalk's attorneys, relying on a replacement cost of $3,408,957—Paul Werner's estimate of the cost to replace Building 1 in 2006 had the insurance litigation not been filed.  State Auto also points to Jury Instruction No. 4, which stated that Boardwalk sought $3,408,957 as the replacement cost for Building 1.  Boardwalk responds that there was sufficient evidence to support the jury's finding of a higher replacement cost, including Patrick Bello's testimony regarding the higher bids he received when he initially collected information to aid in adjusting the property damage claim.

In reviewing the damages award in this case, the Court must view the evidence in the light most favorable to the prevailing party to determine if "the amount of damages awarded is clearly erroneous, or there is no evidence to support it."[8]  "When the damages awarded by the

---

[6]*Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 150 (2000) (citation omitted); *see also Rocky Mountain Christian Church v. Bd. of Cnty. Commr's*, 613 F.3d 1229, 1235 (10th Cir. 2010).

[7]*See Cooper v. Asplundh Tree Expert Co.*, 836 F.2d 1544, 1547 (10th Cir. 1988).

[8]*Russo v. Ballard Med. Prods.*, 550 F.3d 1004, 1018 (10th Cir. 2008) (quotation and citation omitted).

jury fall within the range permitted by the evidence admitted at trial (and whose admission is unchallenged on appeal), we may not second guess the award."[9]  The Court easily finds that the jury's damages award was supported by the evidence presented at trial.  Boardwalk presented evidence through the testimony of Bello, the independent adjuster who initially investigated the claims, about the various bids he obtained to determine the replacement cost value of Building 1 in 2005 and 2006.  The evidence of replacement cost value ranged from Werner's $3.4 million estimate[10] to a $4.4 million estimate Bello procured from Damage Control.[11]  The jury's replacement cost finding for Building 1 is well within the range established by the evidence so the Court cannot find, when viewing the evidence in the light most favorable to Boardwalk, that the jury's replacement cost finding is clearly erroneous.

State Auto cross-references its Rule 50(a) motion, in which it argued that Boardwalk did not "actually replace" Building 1 because it did not replace it as soon as reasonably possible after the loss, yet provides no further argument.  To the extent this reference is sufficient to preserve the argument raised in its earlier motion, the Court denies the motion for the same reasons already articulated.  The Policy very clearly does not require that Boardwalk replace Building 1 with a replica, and the testimony was consistent at trial that Boardwalk only sought replacement cost damages for the 76 units destroyed in Building 1 by the fire.  In fact, the evidence showed that  Boardwalk initiated replacement in January 2010 and completed the replacement in July 2011, within the 24-month period of restoration Mark Lovrak testified at

---

[9]*Id.*

[10]*See, e.g.*, Ex. 108.

[11]*See, e.g.*, Ex. 16.

trial was reasonable.[12]  There was sufficient evidence presented to the jury that the replacement

cost value of Building 1 exceeded the $2.1 million indemnity payment, as already described.

And the Court already determined in its summary judgment ruling that Boardwalk initiated

replacement as soon as reasonably possible after the fire; its duty to replace was tolled during the

pendency of the Missouri litigation.  The evidence at trial, including Werner's testimony, was

sufficient to allow a reasonable jury to conclude that Boardwalk replaced Building 1 with

reasonable speed based on the actual time it took to replace the building.

### 2.      Consequential Damages

State Auto argues that the evidence was insufficient at trial to sustain the consequential

damages award; since there are no actual damages on the replacement cost claim, there can be no

consequential damages.  State Auto argues with no further explanation that the replacement cost

of Building 1 did not exceed the 2006 indemnity payment so Boardwalk is not entitled to

consequential damages.  There was significant evidence presented at trial that the cost to replace

Building 1 exceeded the partial payment, as set forth above.  To the extent State Auto's

argument is based on coinsurance, the Court explained its ruling on this issue on summary

judgment and incorporates by reference its denial of State Auto's motion for new trial on this

basis.

The Court considered and discussed the sufficiency of the evidence on consequential

damages in ruling on the motion to alter or amend.  For the same reasons discussed in that Order,

the Court finds that the evidence was sufficient to support an award of $1,562,514.56.  These

damages are within the range of evidence presented at trial, specifically through witnesses

---

[12]Doc. 365, Tr. vol. 2 at 538.

Joseph Lesovitz, Werner, and Randall Wilson.

### 3.      Failure to Cooperate

As with several of State Auto's post-judgment motions and arguments, State Auto's argument on the failure to cooperate defense has mutated over the course of the briefing.  State Auto initially argued that the evidence was insufficient to establish that Boardwalk cooperated with State Auto in its investigation of the claim, and that it failed to comply with certain other Policy provisions, such as the requirement to file a notice of claim before filing suit.  In its initial brief, State Auto framed this as a motion with respect to the breach of contract element requiring Boardwalk to perform or be willing to perform in compliance with the contract, for which Boardwalk carried the burden of proof.  Boardwalk responded that State Auto is attempting to bootstrap waived counterclaims by arguing that Boardwalk failed to comply with certain other Policy provisions.  Failure to cooperate was an affirmative defense asserted by State Auto, and the Court has repeatedly held that the only remaining affirmative defense for trial was cooperation in the investigation and settlement of the claim.  The distinction is important because the party who bears the burden of proof on the claim has a more difficult showing on a motion for judgment as a matter of law—it must show that "the evidence is such that without weighing the credibility of the witnesses the only reasonable conclusion is in his favor."[13]

The specific Policy failures cited by State Auto in its opening brief are: (1) it repeatedly requested certain documents and information from Boardwalk dating back to 2006, but Boardwalk provided inaccurate books, records, and tax returns; (2) Boardwalk provided different versions of its 2004 profit and loss statements and 2005 income tax return; (3) Ernie Fleischer

---

[13]*Mercer v. Krug*, 91 F. App'x 74, 76 (10th Cir. 2004) (quotation omitted).

testified and the exhibits show that the books and records failed to represent interest income actually earned from its commercial paper investments or the Creative Candles loan and that this interest was not fully reported on the tax returns; (4) Boardwalk did not provide a complete 2005 tax return until May 2013; (5) Boardwalk failed to provide information about the Park Place loan and about the fact that some of the proceeds were used to pay down a line of credit of Fleischer's wife; (6) Boardwalk failed to act diligently in replacing Building 1 as quickly as possible by not requesting the building permit on the original Werner plans; and (7) Boardwalk materially altered the replacement cost of the complex between the Missouri Litigation and this litigation.

Boardwalk responded to State Auto's motion by arguing that State Auto was trying to expand its only remaining affirmative defense by asserting theories that were either never pleaded, or had been waived.  Indeed, on summary judgment, the Court found that State Auto had waived the failure to cooperate theories not identified in the interrogatories, or argued on summary judgment.[14]  In the reply to the motion for judgment as a matter of law, State Auto advances only one argument: that the unequivocal admissions at trial by Fleischer that Boardwalk provided inaccurate tax returns that did not properly disclose the amount of interest income amassed, prove that Boardwalk failed to cooperate with State Auto thereby requiring entry of judgment as a matter of law in favor of State Auto on the affirmative defense.

The Court disagrees that State Auto has met its burden of demonstrating that, without weighing the credibility of the witnesses, the only reasonable conclusion is that Boardwalk failed

---

[14]Boardwalk asked State Auto in its Second Set of Interrogatories to identify "each and every instance in which Boardwalk failed 'to cooperate with State Auto in the investigation or settlement of the claim,' as alleged in this affirmative defense."  Doc. 215, Ex. 7 at No. 5.  State Auto itemized five instances of failure to cooperate, none of which state that Boardwalk failed to submit proof of loss, a theory it advanced on summary judgment. *See also* Doc. 246 at 55–56.

to cooperate by initially providing State Auto with tax returns, filed on an accrual basis, that did not fully disclose the amount of interest income earned by Boardwalk in 2005.  Viewing the evidence in the light most favorable to Boardwalk, the Court finds that a reasonable jury could have rejected State Auto's affirmative defense.  Bello testified about the volume and quality of evidence submitted by Boardwalk during the initial adjustment of its claims;[15] Fleischer, Boardwalk's managing member, testified about offering to provide documents to State Auto during a 2007 deposition showing its investments of the indemnity payment and about authorizing production of several large batches of materials to State Auto;[16] and several trial exhibits evidence the attempts by Boardwalk to comply with State Auto's requests for information in investigating the business income claim.[17]

Fleischer's testimony about inaccurate tax returns, filed on an accrual basis, does not establish that Boardwalk failed to cooperate.  He testified that State Auto first requested tax returns for 2004–2007 in 2010.[18]  Fleischer testified that before producing the returns to State Auto, he reviewed them and discovered errors with regard to earned interest on the 2006 through 2009 returns: all of the interest earned from a loan to Creative Candles (an investment made with part of the indemnity payment) was reported for the year 2006, resulting in over reporting on that interest, but the Creative Candles interest was mistakenly overlooked by about $15,000 per year from 2007 through 2009.[19]  While it is true that Fleischer testified that the tax returns contained

---

[15]Doc. 365, Tr. vol. 2 at 345–46,  377.

[16]Doc. 368, Tr. vol. 5 at 995–1004; Doc. 371, Fleischer Tr. at 38–39.

[17]Exs. 78, 81, 85, 135.

[18]Doc. 371, Fleischer Tr. at 38–39.

[19]*Id.* at 44, 104–06.

errors, the jury was also entitled to give weight to Fleischer's testimony that the errors were simply mistakes and did not rise to the level of failing to cooperate in State Auto's investigation.

Moreover, in order to invoke the failure to cooperate clause, the Court instructed the jury that State Auto must show that the failure to cooperate caused State Auto substantial prejudice in defending the claim.[20]  Boardwalk submitted evidence that the tax returns were not material to the determination of actual interest earned on Boardwalk's investments of the $2.1 million indemnity payment.  Fleischer testified that because Boardwalk's tax returns are prepared on an accrual basis, they did not reflect interest income actually received—State Auto would have needed the note on the Creative Candles loan, bank records, or books to make that determination.[21]  Lesovitz, Boardwalk's damages expert, similarly testified that he could not rely on the tax returns to determine actual interest earned on those investments, instead relying on the Creative Candles note, as well as bank statements and the books and records.[22]  The jury was entitled to accept Fleischer and Lesovitz's testimony that the tax returns were not material in determining actual interest earned, and therefore any mistakes caused State Auto no prejudice. For all of these reasons, the Court denies State Auto's motion for judgment as a matter of law on the failure to cooperate affirmative defense based on the mistaken tax returns.

**4.      Joseph Lesovitz's Methodology and Opinion Regarding the Park Place Loan**

At trial, the parties agreed that Boardwalk provided approximately $1 million of the

---

[20]*Boone v. Lowry*, 657 P.2d 64, 70 (Kan. Ct. App. 1983); *King v. Fed. Ins. Co.*, 788 F. Supp. 506, 506–07 (D. Kan. 1992); *Cessna Aircraft Co. v. Hartford Acc. & Indem. Co.*, 900 F. Supp. 1489, 1517 (D. Kan. 1995); *see infra* Part III.B.4.a.

[21]Doc. 371, Fleischer Tr. at 124–25.

[22]*See, e.g.*, Doc. 369, Tr. vol. 4 at 853–58, Doc. 369, Tr. vol. 5 at 933–934, 937–38, 957.

indemnity proceeds to Park Place, an LLC with the same members as Boardwalk.  Lesovitz testified that there was no loan document associated with this transfer, and that the books and records did not otherwise support State Auto's claim that Boardwalk earned interest on this transfer.  State Auto argues that Lesovitz's testimony that the Park Place transfer was not a loan, but an advance, lacked foundation.  It characterizes this testimony as "wild speculation" and generically refers to "undisputed evidence" that the loan was repaid and that it was a loan and not an advance.

Boardwalk argues that substantial evidence supported Lesovitz's conclusion about the Park Place transfer.  Fleischer testified that this was a transaction between family-owned businesses, each owned by the same members, so no interest was charged or earned.  Further, these LLCs did not pay taxes at the corporate level; instead, income and expenses were paid on the members' tax returns.  Also, Lesovitz testified that there was no loan document showing a loan term, or interest rate.  State Auto replies that the interest earned would be the interest saved on Mrs. Fleischer's line of credit that was paid down and that the failure to properly back out this sum is fatal to Lesovitz's testimony.

The Court finds that Lesovitz's testimony was sufficient to convince a reasonable jury that the Park Place loan did not produce a return to Boardwalk.  He testified that he could not infer an interest rate given the lack of loan documentation and the lack of any evidence in the books and records that Boardwalk earned a return on this investment.  Also, the jury heard State Auto's evidence about the interest amount saved by paying down Mrs. Fleischer's line of credit, but obviously did not credit this testimony.  Moreover, as the Court ruled on summary judgment and *in limine*, the issue to be decided at trial was not about theoretical interest, or imputed

13

interest; the jury was to determine the amount of interest Boardwalk actually earned on investing the indemnity payment that was available to pay operating expenses.  There was sufficient evidence before the jury to support Lesovitz's testimony that the Park Place transfer did not earn Boardwalk any interest.

## III.   Motion for New Trial

### A.     Standard

Under Federal Rule of Civil Procedure 59(a), a court may grant a new trial on all or some of the issues on motion of a party "after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court."[23]  Motions for new trial are committed to the sound discretion of the district court.[24]  Courts do not regard motions for new trial with favor and only grant them with great caution.[25]

"If 'a new trial motion asserts that the jury verdict is not supported by evidence, the verdict must stand unless it is clearly, decidedly, or overwhelmingly against the weight of the evidence.'"[26]  If a new trial motion is based on an error at trial, the court must not grant the motion unless the error prejudiced the party's substantive rights.[27]

### B.     Discussion

State Auto's motion for new trial identifies a laundry list of alleged "trial" errors, many

---

[23]Fed. R. Civ. P. 59(a)(1)(A).

[24]*See Unit Drilling Co. v. Enron Oil & Gas Co.*, 108 F.3d 1186, 1193 (10th Cir. 1997).

[25]*Franklin v. Thompson*, 981 F.2d 1168, 1171 (10th Cir. 1992).

[26]*M.D. Mark, Inc. v. Kerr-McGee Corp.*, 565 F.3d 753, 762–63 (10th Cir. 2009) (quoting *Anaeme v. Diagnostek, Inc.*, 164 F.3d 1275, 1284 (10th Cir. 1999)).

[27]*See Henning v. Union Pac. R.R.*, 530 F.3d 1206, 1216–17 (10th Cir. 2008) (citing Fed. R. Civ. P. 61).

of which in fact identify errors in various pretrial rulings.  These errors fall into the following broad categories: (1) dispositive pretrial orders; (2) rulings *in limine*; (3) jury instructions; (4) evidentiary rulings; and (5) sufficiency of the evidence.  The Court addresses each category in turn.

### 1.      Dispositive Pretrial Orders

State Auto claims the Court erred in: (1) granting Boardwalk's motions to strike its affirmative defenses and counterclaims for fraudulent misrepresentation, negligent misrepresentation, fraudulent concealment, negligent concealment, and concealment; (2) denying its motion for judgment on the pleadings; (3) and denying its motion for leave to file its third amended answer and counterclaims on the eve of trial.  The Court ruled on these motions in extensive memoranda and orders, including a motion for reconsideration.[28]  For the reasons explained fully in those orders, the Court finds no cause for a new trial.

Several grounds raised in State Auto's motion for new trial challenge the Court's summary judgment rulings: (1) that the amount of interest income deducted from the business income loss must have been "actually earned in cash"; (2) that the replacement cost of the complex excluded law and ordinance costs while the replacement cost of Building 1 included law and ordinance costs; (3) that the period of restoration extended to at least September 8, 2009; and (4) that saved depreciation expenses should not be deducted from Boardwalk's business income claim.  The Court fully addressed each of these arguments in its lengthy summary judgment order,[29] and hereby incorporates its rulings on those issues in denying State Auto's

---

[28]Docs. 103, 189,  241, 319.

[29]Doc. 246.

motion for new trial.  While these pretrial substantive rulings may serve as the basis for appeal, the Court does not consider them to be appropriately challenged in a motion for new trial.

### 2.      Evidentiary Rulings *in Limine*

Prior to trial, the Court considered several motions *in limine* presented by the parties, largely dealing with how to present parties' evidence to the jury in light of the summary judgment rulings.  The summary judgment rulings therefore dictated many of the relevance issues presented *in limine*.  State Auto challenges the following evidentiary rulings made *in limine*: (1) excluding evidence of coinsurance, any argument that Boardwalk was underinsured, and the Policy provisions relating to coinsurance; (2) excluding testimony about Boardwalk's prior inconsistent positions on the value of the Boardwalk complex unless they applied to the correct time frame and excluded law and ordinance costs; (3) admitting evidence of consequential damages and failing to bifurcate the trial as to consequential damages; (4) admitting evidence and instruction about the Kansas Unfair Claims Settlement Practices Act; and (5) excluding evidence of imputed interest earned by Boardwalk on the indemnity payment.

### a.      Coinsurance

The Court granted Boardwalk's motion *in limine* to exclude references to coinsurance, a coinsurance penalty, or suggestions that Boardwalk was underinsured.  The Court agreed with Boardwalk that the only relevant inquiry for the jury on the coinsurance defense was the value of the Boardwalk complex.  Based on the jury's finding on this issue, it would be clear whether the coinsurance applied in this case, and if so, by what amount it reduced the replacement cost damages for Building 1.  The Court conducted a Rule 403 balancing test and found that the probative value of State Auto explaining coinsurance to the jury was outweighed by the

prejudicial effect and potential for jury confusion in admitting this evidence.  State Auto argues

in its motion for new trial that the Court erred in finding that the coinsurance concept was too

complex for the jury to understand, necessitating the concept from being barred from trial,

preventing State Auto from explaining to the jury how it arrived at the $2.1 million indemnity

payment in February 2006, and prevented it from explaining to the jury why it was required to

make a finding on the value of the complex.  As a result, State Auto claims that the Court's

ruling prejudiced its substantial rights.

     State Auto misconstrues the Court's jury confusion finding.  The Court did not find that

the coinsurance concept standing alone would cause jury confusion because it is too complex.

The Court excluded the coinsurance policy provision because of the degree to which it had been

interpreted by this Court on summary judgment and in accordance with the prior Missouri

litigation.  More importantly, the Court found that the probative value of this evidence and

argument, when weighed against the potential for jury confusion, was limited.  The jury did not

need to have coinsurance explained—an explanation that would have likely required repeated

instructions on the meaning of its Policy terms in light of the summary judgment order and the

Missouri litigation—in order to determine whether Boardwalk was underinsured.  The

interrogatories presented to the jury on the verdict form elicited the only information necessary

to determine if coinsurance applied, and if so, by how much: what was the value of the

Boardwalk complex not including law and ordinance costs, and what is the replacement cost of

Building 1, including law and ordinance costs?

     Moreover, the Court's *in limine* ruling did not prejudice State Auto's ability to explain its

$2.1 million indemnity payment.  While State Auto construed the Court's ruling as preventing

any explanation about this payment, the Court made no such ruling.  In fact, after repeated

objections, the Court spelled out for State Auto how to explain the payment to the jury without

violating the *in limine* ruling with respect to coinsurance, or with respect to the issues decided in

the Missouri litigation:

> So I think it's appropriate for you to ask this witness about—about the fact that they paid 2.1 million and that they—you know, that they had a basis for that.  And that the—it was based in part on an actual cash value of 1.7 million.  But that's not the same as replacement cost value.  That's not the issue before the jury.  So I mean, if you want to have it—at least say that, you know, it was based on their calculation of actual cash value, that's fine.
>
> I think it is misleading to the jury to suggest that—that Boardwalk and State Auto had agreed to this figure, as if that has any relevance in this case in terms of replacement value, because it doesn't.  But I do think you should have the opportunity to refute this notion that State Auto just picked this figure out of the sky.  I mean, that they have some basis for this.
>
> . . . .
>
> So here's what you need to do, as I said before, reference the fact that he was asked about, you know, that there was no basis for the 2.1, and say there was a basis.  The basis was we were trying to comply with this provision of the policy which told us to pay the value of the lost or damaged property.  And that's what we thought the value was.  All right?
>
> . . . .
>
> The point that you are entitled to make is that the 2.1 million had a basis, it had a basis in the policy.  They were trying to comply with the language of the policy.  And under the language of the policy, at least in State Auto's interpretation of the policy, this is what they had to do and that's what they did.  That's the point you want to make. All right?
>
> . . . .
>
> Likewise, it's not necessary for anyone to be talking about coinsurance or underinsurance in this case.  That's not decided.  The jury is ultimately going to hear those numbers, that we can determine whether that's the case or not.  That's a concept that's not relevant.  It's a

concept—it may—it may be part of the reason why State Auto, you know, took certain actions or didn't take certain actions, that's fine, but you don't have to talk about coinsurance or underinsurance to get there.

What you have to say, though, I think to explain what you did is to say, again, we're following the terms of the policy. And the terms of the policy told us to, you know, make these advance payments. The terms of the policy told us that, you know, that the cost of the complex and the cost—or the value of the complex and value of the building meant something. And we—we didn't agree on either one of those.

That's all you really need to go—that's as far as you need to go, because the jury is here to decide the value of Building 1 and decide the value of the complex. To incorporate all of these other terms of the policy that the jury does not get to decide only confuses them. That's the point I've tried to make all along. All right.[30]

And later, the Court reiterated:

And when you've complained that you could not defend your case of coinsurance without referencing coinsurance, I told you, no, you need to have these witnesses explain that there are provisions of the policy that they need to apply. And, you know, value of the complex versus value of the building, two of them that are very important for them to determine how much is paid. That solves the problem. They don't need to get into the particulars.[31]

State Auto was not hampered in its ability to explain the $2.1 million payment. The jury heard evidence that it was calculated based on State Auto's consideration of certain Policy provisions.

Moreover, the Court agrees with Boardwalk, that based on the undisputed facts and evidence presented on summary judgment, as well as the Eighth Circuit's opinion in the Missouri litigation, it is not true that the $2.1 million indemnity payment was based on an

---

[30]Doc. 366, Tr. vol. 3 at 628–35.

[31]Doc. 368, Tr. vol. 5 at 1094.

application of the coinsurance clause.[32]  The amount of the indemnity payment was based on

State Auto's original position in the Missouri Litigation that the Kansas Valued Policy statute

applied based on a Statement of Values form that it argued had been incorporated into the

Policy.  State Auto replies that under either the Kansas Valued Policy law, or a replacement cost

analysis, State Auto was justified in paying only $2.1 million.  State Auto points to "evidence" in

the form of the summary judgment order, that the value of the complex exceeded the policy limit

and therefore justified a 52–55% coinsurance penalty on the $4 million replacement cost value

for Building 1 (based on Bello's early estimates).  But the evidence pointed to by State Auto is

not trial evidence.  It was a recitation of various complex valuations made in 2007 during the

Missouri Litigation, or before. There is no evidence that those estimates excluded law and

ordinance costs, which was required by the Court's summary judgment rulings.  This evidence

was therefore not presented at trial because it was not relevant to the question of the value of the

complex excluding law and ordinance costs.[33]  And even if this evidence is relevant and was

admitted at trial, it does not support the contention that the $2.1 million dollar indemnity

payment was based on these estimates; estimates made after that payment was made.  In sum, an

explanation about why State Auto paid Boardwalk $2.1 million dollars in February of 2006

would not include a discussion of coinsurance because at that time State Auto took the position

that Boardwalk was not entitled to the replacement cost of Building 1 but was instead limited by

the Kansas Valued Policy law.  Again, the Court determined that an extensive discussion about

---

[32]*State Auto Prop. & Cas. Ins. Co. v. Boardwalk Apts., L.C.*, 572 F.3d 511, 516 (8th Cir 2009) ("State Auto asserts that its liability is limited to $2.1 million, as listed in the Statement of Value submitted with the 2004 application.").  In the Missouri litigation, State Auto pleaded coinsurance as an alternative to this claim.

[33]*See infra* Part III.B.1.b.

the issues decided in the Missouri litigation was not relevant to the claims in this case and did not survive a Rule 403 analysis.

Likewise, the Court finds no prejudice based on the failure to provide the jury with a specific explanation for its determination of the complex value. The Court explained to the jury that it would be required to make this determination and defined for the jury how to determine the value of the complex. The jury heard evidence about the value of the complex. The jury heard references and instructions to the fact that State Auto considered various policy provisions in determining its advance payment, that this case had been litigated once before, and that one of its tasks was to determine the value of the complex. The interrogatory on the verdict form regarding complex value is therefore not akin to asking the jury whether the Kansas City Royals or St. Louis Cardinals are a better baseball team, as State Auto suggests. The Court presumes that the jury followed its instructions and confined itself to the evidence presented in the case.[34]

b.      Prior Inconsistencies on the Complex Value

State Auto sought to argue at trial that Boardwalk took inconsistent positions on the value of the complex between the Missouri litigation and this litigation. State Auto first claims the Court erred in excluding the expert report of Kenneth Jaggers, an expert who testified by deposition in the Missouri litigation that the replacement cost for the complex, as it existed on October 7, 2005, exceeded the policy limit of the complex. The parties disputed whether his opinion included or excluded law and ordinance costs. The Court excluded this report for lack of foundation—State Auto did not call Jaggers as a witness to explain whether his report

---

[34]*See, e.g.*, *CSX Transp., Inc. v. Hensley*, 556 U.S. 838, 841 (2009).

included or excluded law and ordinance costs, and would therefore be relevant to the issues in this case.  State Auto attempted instead to admit the report through its cross-examination of Fleischer and argue that because it had been given to Fleischer and turned over to State Auto, it was not required to admit the report through Jaggers himself.

The Court did not err in excluding this report for lack of foundation.  The Court acknowledged that Exhibit 460 included two different replacement cost estimates for the complex: one that "summarizes actual cash value analysis by the cost approach of the cost on the day of the fire . . . to replace the entire subject property," and one for the "entire property current," on June 19, 2007.  The Court stated that "I would assume [this] means that they've taken into consideration the 2006 law and ordinance costs.  Right?"[35]  But the Court decided that without calling Jaggers to explain the two estimates and whether and to what extent they included law and ordinance costs, there was no way to know whether those estimates were relevant to the jury's question in this case—the replacement cost of the complex on October 7, 2005, excluding law and ordinance costs.  Fleischer was without personal knowledge to testify about the basis for these two estimates, an inquiry for which the Court permitted State Auto to voir dire the witness.

State Auto continues to make much out of a single sentence from the summary judgment order denying its motion to apply judicial estoppel based on these purportedly inconsistent positions by Boardwalk.  While this Court acknowledged that the two values appeared inconsistent, the Court explained that this was not an issue that the court decided in the Missouri

---

[35]Doc. 371, Fleischer Tr. at 143.

litigation, so it caused State Auto no prejudice.  Moreover, this was an argument Boardwalk

made in the context of an alternative third-party claim against its insurance agent, alternative to

its primary claim that it was entitled to the full replacement cost of Building 1.  While the Court

stated that it would allow State Auto to present evidence that contradicted Boardwalk's complex

estimates, the evidence still needed to be admissible.  State Auto opted not to call Jaggers as a

witness to establish a foundation for his report.  The Court did not err in finding that the report

could not be admitted through Fleischer.

Next, State Auto argues that the Court erred in excluding the Statement of Values signed

by Fleischer on October 7, 2005,[36] claiming a replacement cost for the complex of $100 per

square foot.  But again, the Court properly excluded this evidence because it was not relevant to

the question of the value of the complex, excluding law and ordinance costs, on October 7, 2005.

The Court found that the document should be excluded because it was made for the purposes of

obtaining coverage during the Missouri litigation and not in order to calculate replacement cost

coverage.[37]   Fleischer testified, in identifying the document, that he signed this document in

2007 for the purpose of obtaining insurance on the complex for the period February 12, 2007 to

February 12, 2008.[38]  Because the jury's inquiry was limited to the question of the replacement

cost value of the complex on the date of the fire, this evidence was not relevant.  The Court

further agrees with Boardwalk's argument that even if this evidence was improperly excluded,

there is no showing of prejudice to State Auto because counsel elicited the $100 per square foot

---

[36]Offered as Ex. 485.218.

[37]Doc. 371, Fleischer Tr. at 172.

[38]*Id.* at 162.

figure from Fleischer and published the document to the jury before the document was excluded.[39]

Finally, State Auto claims the Court erred in excluding Brent Vincent, State Auto's underwriter, from testifying at trial. Boardwalk objected to State Auto calling him at trial because it had previously failed to disclose Vincent as a witness with an opinion on the replacement cost of the complex. The Court excluded this witness from testifying after hearing a proffer because it found that the witness would present opinion testimony as to the replacement cost of the complex that had not been previously disclosed.

Under Fed. R. Civ. P. 37(c)(1): "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence . . . at trial, unless the failure was substantially justified or harmless." Whether a violation of Rule 26(a) is "substantially justified" or "harmless" is left to the broad discretion of the court.[40] The following factors guide this discretion: "'(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness.'"[41]

Vincent was disclosed under Rule 26(a): "Mr. Vincent's knowledge pertains to the

---

[39] *Id.* at 166. The Court initially admitted the document and then reversed its ruling after hearing Fleischer's testimony that it was completed in order to change the type of insurance company for the Boardwalk complex.

[40] *See, e.g.*, *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 953 (10th Cir. 2002) (quoting *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999)).

[41] *Id.* (quoting *Woodworker's Supply, Inc.*, 170 F.3d at 993).

underwriting file and other related matters,"[42] a description the Court noted was vague and generic.  Importantly, Vincent had not been previously disclosed as a witness "supporting State Auto's claim of a [53%] coinsurance penalty on Boardwalk's property loss claim,"[43] in response to a specific interrogatory propounded by Boardwalk.  State Auto identified witnesses Bello, Jaggers, Mark Nixon, and Scott Baker, but did not list Vincent.  And while Vincent was listed on the trial witness disclosure, State Auto provided no description of his anticipated testimony.  Given these facts, the Court did not err in finding that his testimony should be excluded.  The degree of prejudice and unfair surprise by Boardwalk is substantial, and given the last minute disclosure about the scope of his testimony, the ability of State Auto to cure this prejudice was quite limited given that Boardwalk was unable to depose this witness about this opinion prior to trial.

The appropriate interrogatory for disclosing Vincent as a witness who would testify about the replacement cost of the complex was certainly propounded after the replacement cost claim had been added, as set forth above.  And the extent to which Boardwalk understood the scope of the underwriting file as it pertained to its third-party claim in the Missouri litigation does not mean that it was on notice of the opinion testimony that State Auto would elicit from Vincent in this litigation.

Moreover, the Court did not err in finding that Vincent could not testify to matters relevant to the replacement cost of the complex as defined by the Court's summary judgment

---

[42]Doc. 379, Ex. A.

[43]Doc. 379, Ex. B (State Auto's First Supplemental Responses to Boardwalk's Second Set of Interrogatories).

ruling because his testimony relied on submissions for coverage submitted by Boardwalk after the fire. The Court excluded this testimony for the same reasons as the Court excluded the 2007 Statement of Value form—it did not relate to the replacement cost of the complex in 2005 at the time of the fire. For all of these reasons, State Auto's motion for new trial is denied on this point of error.

<strong>c.     Admitting Evidence of Consequential Damages and Failing to Bifurcate</strong>

State Auto argues that the Court erred by allowing the jury to consider consequential damages before determining whether it owed actual damages on the property damage claim. It argues that State Auto suffered prejudice because allowing evidence on consequential damages improperly suggested that it had breached the Policy.

The Court finds no error. As already discussed in detail, the jury was fully equipped to render the predicate valuation findings to allow the Court to apply the coinsurance provision if necessary. There is no indication in the record that the failure to articulate to the jury the meaning of coinsurance prejudiced them in favor of awarding consequential damages. Moreover, the interrogatory on the verdict form instructed the jury that it could only find consequential damages if it found that the replacement cost of Building 1 exceeded the indemnity payment.[44] Of course, if the coinsurance provision applied to reduce the Building 1 recovery below the indemnity payment, there could be no consequential damages and no judgment could be entered on such an amount even if the jury attempted to award one. Given these parameters, the Court cannot find error in submitting the question of consequential

---

[44]Doc. 341.

26

damages to the jury along with its primary liability and damages questions.  Indeed, these issues are commonly submitted to the jury at the same time.

The Court likewise did not err in declining to bifurcate the trial, a request made for the first time at the *in limine* conference on the eve of trial.  A request to bifurcate may be granted under Fed. R. Civ. P. 42 with regard to "judicial efficiency, judicial resources, and the likelihood that a single proceeding will unduly prejudice either party or confuse the jury."[45]  As already described, the likelihood that a single proceeding would prejudice State Auto was low.  Moreover, bifurcation would certainly run contrary to the Court's interest in judicial efficiency and preservation of judicial resources.  The evidence presented on consequential damages was intertwined with evidence on both breach of contract claims of actual damages.  To require the jury to sit through potentially two rounds of evidence on these matters would have been inefficient.

### d.    Admitting Evidence about State Auto's Claims Handling Procedures

State Auto sought an *in limine* ruling excluding certain exhibits marked by Boardwalk containing Kansas insurance regulations and the State Auto claims manual.  Boardwalk responded that they must be allowed to use the regulations to show that they cooperated with State Auto in the investigation of the claims.  The Court ruled that the witnesses may testify about their understanding of the regulations and that the Court would instruct the jury that this testimony is not the law; the Court would instruct the jury as to the law that applies to this case at the conclusion of the evidence.  State Auto argues that the Court erred by allowing Boardwalk

---

[45]*York v. AT&T*, 95 F.3d 948, 958 (10th Cir. 1996).

to introduce evidence concerning the Kansas Unfair Claims Settlement Practices Act as a "sword," instead of merely a "shield" to defend itself on the failure to cooperate claim and that the evidence did not relate to the narrow issue of the completeness of the tax returns.

The Court did not err by allowing Boardwalk to elicit from Marc Lovrak of State Auto, his understanding of the Act's requirements and how those requirements applied to the claims handling process in this case. They are incorporated into State Auto's claims manual,[46] and provide industry standards for communications between State Auto and its insured. When the issue was raised contemporaneously, the Court also required Boardwalk to focus on the specific provisions of the claims manual that it would use to rebut the allegation that Boardwalk failed to cooperate. The Court observed that a key question on the affirmative defense was whether Boardwalk failed to assist and cooperate in the investigation of the claim, or instead, whether State Auto refused to communicate with Boardwalk, which was its defense.[47] Before allowing Exhibit 93 to go back to the jury, the Court required Boardwalk to excise the provisions that were not relevant to its defense; the Court did not permit the entire claims file to be admitted.[48]

Moreover, after allowing Boardwalk to examine Mr. Lovrak for a period of time about these issues, State Auto moved for a mistrial. The Court explained the limited relevance of this evidence and directed Boardwalk to

> cut to the chase with this witness. . . . I don't think at this point we need to hear any more about, you know, the policy and procedures, the Unfair Claims Practice laws. I mean, I'm going to have to continue to give the

---

[46]Ex. 93.

[47]*See* Doc. 365, Tr. vol. 2 at 467.

[48]*Id.* at 468–69.

> jury limiting instructions on that.  I—I understand you want to set the
> stage, I just don't think it's appropriate to keep going on and on about it,
> because that's not really what this case is about.[49]

Nonetheless, the Court overruled and denied the motion for mistrial, finding no prejudice to

State Auto in allowing Boardwalk to try to establish that State Auto "drug its feet" in

investigating the claim, which was a central dispute in the case.[50]

Moreover, the Court provided the jury with an appropriate limiting instruction about the

extent to which it could consider this evidence: "Boardwalk does not assert a claim in this case

under the UCSP, however, you may consider these provisions when you determine whether

Boardwalk failed to cooperate as provided under the policy and defined in these instructions."[51]

This instruction was provided in the final instructions.  And at the time the evidence was

introduced, the Court provided the jury with a limiting instruction.[52]  The Court did not err in

admitting this evidence on a limited basis and subject to a limiting instruction.

### e.      Excluding Evidence of Accrued or Imputed Interest

On summary judgment, the parties disputed whether Boardwalk's otherwise recoverable

business income should be reduced by the amount of gross profits it earned from investing the

2006 indemnity payment.  The Court determined that the Policy language allowing Boardwalk to

recover for "actual loss" of "business income" means that it must back out from the loss any

interest income Boardwalk earned during the period of restoration that was available to pay

---

[49]*Id.* at 494.

[50]*Id.* at 495.

[51]Doc. 338, Instruction No. 15.

[52]Doc. 365, Tr. vol. 2 at 474–75.

Boardwalk's expenses.  But the Court found that there was a genuine issue of material fact about whether Boardwalk "actually earned" interest in the amounts asserted by State Auto on the partial payment.  And the Court noted the parties' dispute about the significance of Boardwalk's tax statements in determining these amounts and whether the interest amounts on those statements represent interest actually earned, or simply accrued for tax reporting purposes.

In line with the Court's ruling on summary judgment, Boardwalk sought a ruling *in limine* that the Court exclude evidence of imputed investment earnings from the State Auto 2006 partial building indemnity payment.  State Auto disagrees with the Court's interpretation of its own summary judgment order and suggests that by excluding evidence of imputed or accrued interest earnings, the Court erroneously equated "available to pay operating expenses" with "cash."  But State Auto misconstrues the Court's ruling.  It was based, at State Auto's urging, on an interpretation of the term "actual loss" of "business income," not "available to pay operating expenses."  Given this language of the Policy, the Court has consistently held that gross profits actually earned on the indemnity payment should be backed out of the business income award in this case.  The question left for trial was how much interest was actually earned on that investment.

State Auto argues for the first time in its motion for new trial that since Boardwalk used an accrual method of accounting to file its federal income tax returns, State Auto was allowed under the terms of the Policy to determine business income loss under this method as well.  State Auto points to the Policy provision that states: "[t]he amount of Boardwalk's business income

claim will be determined based on . . . [its] financial records and accounting procedures."[53]  *In limine*, State Auto sought to introduce evidence of imputed interest as a mitigation defense—arguing that it is entitled to set off the interest income Boardwalk could have reasonably earned on the indemnity payment.  That motion was denied.  The Court granted Boardwalk's motion that evidence of imputed or hypothetical interest earnings is not relevant based on its summary judgment ruling.

Assuming State Auto preserved this argument, the Court disagrees that the terms of the Policy dictate the determination of interest income based on an accrual method.  That provision of the Policy merely states the various types of documents that State Auto could require to calculate the business income claim.  Given the rationale of the Court's holding that gross profits should be backed out of business income—that a business income policy "is designed to do for the insured in the event of business interruption . . . just what the business itself would have done if no interruption had occurred,"[54] it would not make sense to punish Boardwalk based on earnings that it never actually received.  Moreover, as State Auto admits, Boardwalk's books were kept on a cash, not an accrual basis.  And the jury heard dueling testimony from the experts about the value of Boardwalk's accrual based tax returns in determining interest earned on the indemnity payment.  As such, the Court finds no error in disallowing evidence of imputed or hypothetical interest earned on the indemnity payment.  And given the detailed testimony by Wilson, State Auto's damages expert, about imputed interest, the Court finds that its rulings caused State Auto no substantial prejudice.

---

[53]Ex. 485.78.

[54]*Nat'l Union Fire Ins. Co. v. Anderson-Pritchard Oil Corp.*, 141 F.2d 443 (10th Cir. 1944).

### 3.     Contemporaneous Evidentiary Rulings

State Auto's opening brief challenges the Court's "numerous evidentiary rulings on State Auto's presentation of the evidence that were substantially erroneous," and claims that the "Court did not consistently apply the same rulings to Boardwalk's presentation of evidence."  Its argument totals one paragraph in length and fails to identify with particularity any specific ruling made during trial.  Instead, it provides two "examples."  First, State Auto argues that the Court sustained Boardwalk's hearsay objection to introducing Mr. Lesovitz's expert report even though Lesovitz was on the witness stand and had identified the report.  Second, State Auto states that the Court inconsistently ruled on the parties' objections to questions of the damages experts regarding inappropriate hypotheticals.

In its reply, State Auto failed to actually reply to Boardwalk's response about the two examples provided in the first brief and instead added two more "examples," in addition to referencing  "other inconsistencies noted in this memorandum or contained in the record": (1) allowing Boardwalk to use state regulations and the claims manual as a "sword" despite a ruling *in limine* that restricted their use as a "shield"; and (2) inconsistency between the Court's trial ruling that "actually earned interest" is cash and its summary judgment ruling that the interest had to be actually earned, which State Auto contends includes accrued interest.  Again, this section of the brief spanned one paragraph.

Boardwalk argues that State Auto's motion is insufficient to specify the bases of State Auto's evidentiary challenges beyond the two examples originally cited.  The Court agrees.  The Court likely rendered hundreds of evidentiary rulings during the trial; State Auto must be specific as to which rulings it challenges.  The Court questioned counsel about its evidentiary

challenges at oral argument for this reason.  Unsurprisingly, counsel attempted to list several other rulings State Auto views as erroneous.  The Court will not countenance this approach.  In order to obtain a new trial, State Auto needs to show that the Court erred in an evidentiary ruling and that error affected its substantial rights.[55]  This requires State Auto to specifically identify the rulings it claims are erroneous.  And Boardwalk must be provided with an opportunity to respond to the challenge.[56]  The only specific grounds that were both specifically identified in the motion, and to which Boardwalk was given a full and fair opportunity to respond, are the two examples provided in the opening brief.  The Court notes that the two examples provided in State Auto's reply have been considered and rejected elsewhere in this Order.

State Auto first complains that the Court excluded one of Lesovitz's expert reports.  But the Lesovitz report about which State Auto complains was drafted before the Court's summary judgment ruling on interest income.[57]  After ruling on summary judgment that actual interest earned on the $2.1 million indemnity payment may offset the business income damages, the Court allowed both damages experts to amend their reports to reflect this calculation.  Mr. Lesovitz had amended the report offered by State Auto, so the Court excluded it under Fed. R. Evid. 401.  As to the Court's actual versus accrued interest rulings, for the same reasons discussed with respect to the Court's *in limine* rulings, State Auto is not entitled to a new trial.

---

[55]*See, e.g.*, *Webb v. ABF Freight Sys., Inc.*, 155 F.3d 1230, 1246 (10th Cir. 1998).

[56]*See Water Pik, Inc. v. Med-Sys., Inc.*, 726 F.3d 1136, 1159 n.8 (10th Cir. 2013) (declining to address argument that is not raised in the opening brief and deprived the opposing party an opportunity to respond).

[57]Offered as Ex. 484.1–.121 (report dated Apr. 30, 2013).

**4.      Jury Instructions**

**a.      Instruction No. 14**

State Auto first argues that Instruction 14 erroneously instructed the jury on the failure to cooperate defense:

> The policy at issue provided that in the event of a loss, the insured had certain duties, including a duty to cooperate with State Auto in the investigation of a claim.  The policy provided that State Auto had no duty to provide coverage if Boardwalk failed to comply with this duty and the failure substantially prejudiced State Auto in defending against the claim. You must answer "Yes" to Question 8 on your verdict form if you believe Boardwalk failed to cooperate with State Auto during its investigation or settlement of Boardwalk's business income claim and that its failure caused State Auto substantial prejudice in its ability to defend itself.[58]

State Auto argues that Kansas law does not require it to show substantial prejudice on this claim. State Auto argues in the alternative that the Court erred by not defining substantial prejudice for the jury.

As a federal court sitting in diversity, the Court looks to "the law as set forth by the relevant state's highest court.  The decisions of lower state courts, while persuasive, are not dispositive."[59]  If there is no controlling precedent, the Court must predict how the Supreme Court of Kansas would rule.[60]  At the instruction conference, the Court considered and overruled State Auto's objection to including a substantial prejudice requirement on the failure to cooperate claim based on the Kansas Court of Appeals' decision in *Boone v. Lowry*.[61]  That case

---

[58]Doc. 338, Instruction No. 14.

[59]*Long v. St. Paul Fire & Marine Ins. Co.*, 589 F.3d 1075, 1081 (10th Cir. 2009).

[60]*See Safeco Ins. Co. of Am. v. Hilderbrand*, 602 F.3d 1159, 1163 (10th Cir. 2010).

[61]657 P.2d 64, 70 (Kan Ct. App. 1983), *rev. den.*, Mar. 9, 1993.

undeniably involved a third-party insurance claim, however federal courts in this district have applied its holding in the context of first-party claims.[62]  Indeed, the language in *Boone* announcing this rule included no language limiting it to the third party insurance context: "Breach of a cooperation clause in a liability insurance policy does not by itself relieve an insurer of responsibility.  The breach must cause substantial prejudice to the insurer's ability to defend itself."[63]  Primarily for this reason, the Court found that the substantial prejudice rule announced in *Boone* applied equally in the first-party insurance context and included it in Instruction 14.[64]

State Auto argues that a new trial is warranted because the Court failed to properly predict how the Kansas Supreme Court would rule on this issue.  To the extent the Court's record on this objection at the instruction conference was unclear, the Court clarifies now that it predicts the Kansas Supreme Court would find that the Kansas Court of Appeals' substantial prejudice rule as articulated in *Boone* also applies in the first-party insurance context.

In making this prediction, the Court observes that other  judges in the District of Kansas to consider this question have agreed that *Boone* applies in this context; the Court disagrees that these decisions are not well-reasoned.  Judge Belot applied the rule in *King v. Federal Insurance Co.*, unequivocally finding that it applied to the first-party insurance claim in that case.[65]  Judge

---

[62]*King v. Fed. Ins. Co.* 788 F. Supp. 506, 506–07 (D. Kan. 1992), *aff'd*, 996 F.2d 311 (10th Cir. 1993); *Scottsdale Ins. Co. v. McReynolds*. No. 06-1009-WEB, Mem. & Order Granting Summ. J., Doc. 74 at 17–19 (D. Kan. Oct. 21, 2008).

[63]*Boone*, 657 P.2d at 70.

[64]Doc. 370, Tr. vol. 7 at 1351–52.

[65]788 F. Supp. 506, 506–07 (D. Kan. 1992) ("the court is convinced that Kansas requires a showing of prejudice and that is the law the court is obligated to follow."), *aff'd*, 996 F.2d 311 (10th Cir. 1993).

Belot acknowledged the New Jersey Supreme Court case cited by State Auto, which applied the rule that so long as the withheld documents were found to be "material," coverage may be denied without a showing of prejudice.[66]  Nonetheless, viewing *Boone* as binding, Judge Belot entered judgment in favor of the plaintiff on the failure to cooperate affirmative defense for failure to show prejudice.[67]  Given the strong and unlimited language in *Boone* on this rule, the Court finds that the reason for Judge Belot's decision is perfectly clear.

 Judge Brown also applied the substantial prejudice rule to a cooperation claim in a first party insurance case, in an unpublished decision, *Scottsdale Insurance Co. v. McReynolds*.[68] While Judge Brown did not conduct an extensive analysis of this requirement, he too cited *Boone* for the uncomplicated proposition that the affirmative defense requires a showing of substantial prejudice.[69]

The purpose of a cooperation provision in an insurance policy is similar to notice requirements and other claims handling requirements—it is meant to protect the insurer from having its interests prejudiced by not affording it an opportunity to defend and complete an

---

[66]*See Longobardi v. Chubb Ins. Co. of N.J. & Fed. Ins. Co.*, 582 A.2d 1257 (N.J. 1990).  Of course, applying this rule to the instant case may have unforseen implications for State Auto.  The Court has already determined in striking the related fraud and misrepresentation defenses that the tax documents at issue on this defense are not "material" to determining the business income claim.  Therefore, even under *Longobardi*, a prejudice showing would still be required.

[67]*Id.*

[68]No. 06-1009-WEB, Doc. 74 at 17–19 (applying prejudice rule as stated in *Boone* to first-party insurance claim).

[69]*Id.*

investigation of the claim.[70]  As one court has observed: "The purpose of the cooperation clause is to require the insured to disclose all of the facts within his knowledge, and otherwise aid the company to determine its liability under the policy. It is not the obligation of an insured to assist the insurance company to defeat its liability."[71]  In the context of notice, Kansas requires the insurer to demonstrate substantial prejudice before it may be relieved of liability where the insured fails to notify the insurer of an accident or loss in a timely fashion.[72]

Notably, the language of the cooperation clause in this case, as in many other policies, requires cooperation in both the investigation and settlement of claims.  Of course, in the third party context, this duty arises most often in conjunction with the settlement of the claim.  Here, the duty arises in the investigation of this first party claim.  The Court can find no jurisdiction authorizing a showing of prejudice for failing to cooperate in the settlement of a claim, but not requiring a finding of prejudice for failing to cooperate in the investigation of a first party claim.[73]  Other jurisdictions that require a prejudice showing on a noncooperation defense do not

---

[70]*See Nat'l Union Fire Ins. Co. of Pittsburgh, Penn. v. FDIC*, 957 P.2d 357, 367–68 (Kan. 1998) (discussing purpose of notice-prejudice rule and *Brakeman v. Potomac Ins. Co.*, 371 A.2d 193 (Pa. 1977)); *Cessna Aircraft Co. v. Hartford Acc. & Indem. Co.,* 900 F. Supp. 1489, 1517 (D. Kan. 1995) (explaining that both cooperation and notice provisions in third-party insurance contract require showing of substantial prejudice).

[71]*Miller v. Marcantel*, 221 So. 2d 557, 559 (La. Ct. App. 1969); *see Erie Ins. Co. v. JMM Props., LLC*, 66 A.D.3d 1282, 1284 (N.Y. App. Div. 2009) ("The purpose of a cooperation clause in a fire insurance policy is to enable the insurer to obtain all knowledge and facts concerning the cause of the fire and the loss involved while the information is fresh in order to protect itself from fraudulent and false claims.").

[72]*See. Nat'l Bank of Kan. City v. Cont. Ins. Co.*, 586 F. Supp. 139, 150 (D. Kan. 1992); *Hunt v. Kling Motor Co.*, 841 F. Supp. 1098, 1101–02 (D. Kan. 1993); *Nat'l Union Fire Ins. Co. of Pittsburgh, Penn.,* 957 P.2d at 368.

[73]*See generally* 14 Couch on Insurance 3d ed. § 199:1 (noting the distinction between the duty to cooperate in first party and third party cases and observing that "[s]ome degree of cooperation between insurer and insured is also necessary in the first-party insurance context, of course. Whether the insurance contract pertains to property losses, life insurance, medical or disability insurance, or fidelity insurance, the insurer needs information pertaining to the circumstances and amount of loss, and the insured needs information as to the status of its claim.").

distinguish between third party and first party claims.[74]   The Court predicts that the Kansas Supreme Court would apply the same prejudice rule to first party cooperation defenses as it does to third-party claims and require a showing of substantial prejudice.

State Auto argues next that even if a showing of substantial prejudice is required under Kansas law, the Court erred by failing to define substantial prejudice.  The Court agrees with Boardwalk that State Auto failed to preserve this claim.  Neither party proposed an instruction on substantial prejudice by the deadline to file jury instructions.  State Auto argued that no showing of substantial prejudice was required and objected to Boardwalk's proposed language, submitted on the morning of the instruction conference, defining substantial prejudice.  After announcing its ruling that it would instruct on substantial prejudice, the Court asked if there were any other objections to the instruction, at which point *Boardwalk* stated: "Yes, your Honor. . . .  Boardwalk proposes that the additional language used in the failure to cooperate instruction in the *Scottsdale* case be added to this instruction, specifically defining substantial prejudice.  And I do have an

---

[74]*See, e.g.*, *Stewart Sleep Ctr., Inc. v. Atl. Mut. Ins. Co.*, 860 F. Supp. 1514, 1517 (M.D. Fla. 1993) (applying Florida law in first-party property damage claim after fire); *Ania v. Allstate Ins. Co.*, 161 F. Supp. 2d 424, 427–28 (E.D. Pa. 2001) (applying prejudice rule to failure to cooperate claim under Pennsylvania law in first-party insurance case); *Snyder v. Chester Cnty Mut. Ins. Co.*, 264 F. Supp. 2d 332, 340 (D. Md. 2003) (applying Maryland prejudice rule in first-party context on a claim that the insureds failed to produce requested information during claim investigation); *Found. Reserve Ins. Co. v. Esquibel*, 607 P.2d 1150, 1152 (N.M. 1980) (adopting requirement of substantial prejudice to the insuror on affirmative defense that insured breached a policy provision); *Summit Bank & Trust v. Am. Modern Home Ins. Co.* –F. Supp. 3d–, 2014 WL 5072798, at *6 (D. Colo. Oct. 9, 2014) (applying Colorado law); *Martinez v. Infinity Ins. Co.*, 714 F. Supp. 2d 1057, 1062 (C.D. Cal. 2010) (applying California law and collecting cases discussing prejudice to insurers where the insured fails to produce requested records needed to evaluate the validity of claims); *Chicago Title Ins. Co. v. Bristol Heights Assocs., LLC*, 70 A.3d 74, 86 (App. Ct. Conn. 2013) (applying prejudice requirement to claim that the insured failed to cooperate in coverage investigation by producing documents to insurer); *Staples v. Allstate Ins. Co.*, 295 P.3d 201, 204 (Wash. 2013) (explaining the types of cooperation clauses in third-party and first-party claims but applying same requirements to both, including prejudice); *Tran v. State Farm Fire & Cas. Co.*, 961 P.2d 358, 365 (Wash. 1998) (applying prejudice rule to cooperation clause in first-party case).

instruction to tender on that point."[75]  But that was the first time either party had offered an instruction defining substantial prejudice, after repeated requests by the Court prior to the instruction conference for the parties to propose a joint set of instructions.  For that reason, the Court found that the instructions Boardwalk proposed on the morning of the instruction conference were untimely and further ruled that it would provide the instruction it originally drafted.[76]  Because State Auto provided no alternative proposal about how substantial prejudice should be defined, the Court cannot find that it erred in failing to provide a definitional instruction on this concept.[77]

### b.      Instruction No. 15

State Auto challenges the Court's decision to instruct the jury on the Kansas Unfair Claims Settlement Practices Act ("UCSP") because there was no claim asserted under this law. As the Court explained as to State Auto's objection to evidence of these regulations and the claims handling process, the claims handling process here was highly relevant to Boardwalk's defense to the failure to cooperate affirmative defense.  Boardwalk argued that State Auto did not handle the claims in good faith and failed to comply with industry standards in communicating with Boardwalk about the status of the claim.  As such, the Court provided Instruction 15 to the jury, which explained the relevant provisions of the UCSP, made clear that no claim was being asserted in this case, and that the jury may "consider these provisions when

---

[75]Doc. 370, Tr. vol. 7 at 1352–54.

[76]*Id.* at 1332, 1354.

[77]*See* Fed. R. Civ. P. 51(d) (explaining that a party may assign error to the failure to give an instruction if "that party" properly requested it and also properly objected).  Morever, at the time that Boardwalk requested this instruction, State Auto was on notice that the Court had denied its objection to including the substantial prejudice requirement.  It could have objected at that time to not including further definition of "substantial prejudice."

you determine whether Boardwalk failed to cooperate as provided under the policy and defined in these instructions."  The Court finds no error or prejudice in submitting this instruction to the jury.

### c.      Instruction No. 12

This instruction provided the relevant Policy definitions to the jury regarding the business income claim.  State Auto first complains that the definition of business income was incorrect because it defined only rental income and not the more general business income definition included in the Policy. The instruction provides in relevant part:

> Boardwalk may recover the "actual loss" of "Business Income" that it sustained due to the necessary "suspension" of its "operations" during the "period of restoration."
>
> "Business income" is the net income that Boardwalk would have earned as rental income from tenant occupancy of Building 1, and Boardwalk's continuing normal operating expenses incurred in connection with that premises, including payroll and the amount of charges which are the legal obligation of the tenants but would otherwise be Boardwalk's obligation.[78]

State Auto accuses the Court of inventing its own Policy definitions of these contract terms, but fails to develop an argument as to the error or how it caused State Auto substantial prejudice. The business income definition was wholly derived from Boardwalk's proposed instruction.[79]  It tracks the definition of "rental business income" included in the Policy.[80]  The Court finds no error in this instruction.

---

[78]Doc. 338, Instruction No. 12.

[79]Doc 260 at 17.

[80]It was uncontroverted on summary judgment that State Auto treated the business income claim as arising under the "rental business income" component of the Policy.

State Auto also argues that the Court incorrectly defined "period of restoration."  The Court instructed that: "The period of restoration ends on the date when the property should be replaced with reasonable speed and similar quality."  This corresponds to the language in the Policy that states that the "period of restoration" "Ends on . . . [t]he date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality."[81]  Instruction 12 also reflects the Court's ruling on summary judgment that the period of restoration was tolled during the Missouri litigation.  Given this ruling, the Court could not simply provide the jury with the contract definition without further explanation.  Instead, the Court provided the jury with Boardwalk's proposed instruction that the "period of restoration" included three time intervals, which corresponded to the time intervals provided on the verdict form.  These three time intervals properly instructed the jury on the time periods that the Court had determined must be included in the period of restoration, and the time period for which the jury must determine the appropriate end date under the terms of the Policy.

The Court notes that the portion of its instruction that discusses the end date of the period of restoration tracks closely with State Auto's proposed instruction, which stated that "the 'period of restoration' begins immediately after the time of direct physical loss or damage and ends on the date when the property at the described premises should be repaired, rebuilt, or replaced with reasonable speed and similar quality."[82]  There was no issue in this case about the date the period of restoration began, which was reflected in the instruction provided by the Court.  And State Auto can point to no meaningful difference between its proposed instruction

---

[81]Doc. 1-1, at 51.

[82]Doc. 262 at 14.

and the Court's that amounted to an error that caused it substantial prejudice.  State Auto's

motion for new trial is denied as to this instruction.

### 5.      Sufficiency of the Evidence

State Auto challenges the Court's denial of its Rule 50(a) motion at the close of evidence

on its Third and Fourth Affirmative Defenses.  As discussed in its ruling on the renewed motion

for judgment as a matter of law, State Auto did not meet its burden on these affirmative defenses

to show that the only reasonable conclusion from the evidence was that Boardwalk failed to

cooperate as pled by State Auto.  Moreover, as already discussed, the Court properly instructed

the jury on the legal requirements of State Auto's cooperation defense.

State Auto also argues that neither the replacement cost damages nor the consequential

damages award is supported by the substantial weight of the evidence.  The Court has granted a

remittitur in this case conditioned on the denial of a new trial as to consequential damages.  For

substantially the same reasons discussed in denying the renewed motion for judgment as a matter

of law, the Court finds that the jury's replacement cost finding is not clearly, decidedly, or

overwhelmingly against the weight of the evidence.

### 6.      Cumulative Error

State Auto argues that this is the "rare civil case" where cumulative error actually exists.

Cumulative error applies when "[t]he cumulative effect of two or more individually harmless

errors has the potential to prejudice a defendant to the same extent as a single reversible error."[83]

For all of the reasons set forth above, the Court finds no legal error necessitating a new trial in

---

[83]*Greig v. Botros*, 525 F. App'x 781, 795 (10th Cir. 2013) (internal quotation marks omitted) (quoting
*United States v. Rivera*, 900 F.2d 1462, 1469 (10th Cir. 1990)).

this case outside of the narrow holding on State Auto's request for remittitur.  Therefore, cumulative error would not provide a basis for new trial here.

## IV.     Prejudgment Interest

Plaintiff moves to alter or amend the judgment under Rule 59(e) for an award of prejudgment interest on both claims dating back to 2006 on the following grounds: (1) the Court should reconsider its summary judgment ruling that Boardwalk's business income claim is unliquidated and find that both claims are liquidated; (2) prejudgment interest must be awarded under the Kansas statute based on unreasonable and vexatious delay in payment on the insurance claims; and (3) an exception to the liquidated damages rule applies here in the Court's discretion based on equitable considerations.

The parties agree that in this diversity case, Kansas law determines whether prejudgment interest should be awarded.[84]  The Kansas prejudgment interest statute provides as follows:

> Creditors shall be allowed to receive interest at the rate of ten percent per annum, when no other rate of interest is agreed upon, for any money after it becomes due; for money lent or money due on settlement of account, from the day of liquidating the account and ascertaining the balance; for money received for the use of another and retained without the owner's knowledge of the receipt; for money due and withheld by an unreasonable and vexatious delay of payment or settlement of accounts; for all other money due and to become due for the forbearance of payment whereof an express promise to pay interest has been made; and for money due from corporations and individuals to their daily or monthly employees, from and after the end of each month, unless paid within fifteen days thereafter.[85]

Boardwalk first argues that the breach of contract claims are liquidated and asks the

---

[84] *See Loughridge v. Chiles Power Supply Co.*, 431 F.3d 1268, 1288 (10th Cir. 2005).

[85] K.S.A. § 16-201.

Court to reconsider its summary judgment ruling that its business income damages are unliquidated. In determining whether a claim is liquidated, "it is irrelevant that the underlying liability is disputed, so long as the amount of damages is certain."[86] And a liquidated claim does not become unliquidated simply because a counterclaim or setoff reduces the amount of the final award.[87] For a claim to be certain, it must be "definitely ascertainable by mathematical computation."[88]

The Court previously considered whether the business income claim was liquidated, denying Boardwalk's motion for summary judgment that it is entitled to prejudgment interest on this basis:

> As illustrated by the sheer amount of issues the Court was called upon to resolve on the business income claim in this action, the amount of damages is hotly disputed. The parties dispute the restoration period, the method of calculation, and several specific items involved in the calculation. They each rely on different experts and witnesses in support of their calculation. Given the uncertainty of the damages amount in this case, the Court declines to find that Boardwalk is entitled to prejudgment interest under Kansas law on the basis that it is a liquidated claim; its motion is denied on this issue.[89]

As to the replacement cost claim, Boardwalk argues that it was liquidated on March 27, 2006, because State Auto was aware at that time that the replacement cost of Building 1 "was

---

[86]*Royal Coll. Shop, Inc. v. N. Ins. Co. of N.Y.*, 895 F.2d 670, 674 (10th Cir. 1990).

[87]*Phelps Dodge Copper Prods. Corp. v. Alpha Constr. Co.*, 455 P.2d 555, Syl ¶ 3 (Kan. 1969); *Hatch & Kirk Power Servs. Corp. v. City of Girard*, No. 95-155-Des, 1999 WL 99307, at *1 (D. Kan. Jan. 19, 1999); *Ireland v. Dodson*, 704 F. Supp. 2d 1128, 1147 (D. Kan. 2010).

[88]*See Plains Res. v. Gable*, 682 P.2d 653, 657 (Kan. 1984).

[89]Doc. 246 at 52 (footnotes omitted). Boardwalk did not request prejudgment interest under an equitable theory in its motion for summary judgment, and the Court noted that any determination as to whether such equitable relief is appropriate was premature.

approximately $3.9 to $4 million,"[90] and points to the jury's finding that the replacement cost was consistent with State Auto's determination before the litigation began.  But there were several replacement cost estimates introduced into evidence that varied, ranging from $3.4 million to $4.4 million.[91]  In fact, Boardwalk asked for the lowest replacement cost in its closing argument and in the jury instructions, in line with Werner's opinion of $3,408,957, despite arguing that it was "entitled" to $4 million in its closing argument.[92]  This belies the notion that the replacement cost value of Building 1, irrespective of coinsurance, was "definitely ascertainable by mathematical computation"[93] prelitigation.  Almost all of the remaining issues left for the jury to decide at trial on this claim dealt with how to compute the damages.

Boardwalk asks the Court to reconsider its summary judgment ruling that the claim is unliquidated, arguing (1) the jury's award tracks the 2006 amount Mr. Bello determined when he adjusted the claim; and (2) State Auto did not contest the amount or duration of monthly lost income, but only the offset for interest income and saved expenses.  The Court disagrees with both of these contentions.  First, the Court determined on summary judgment that the adjusted figures by Mr. Bello did not bind State Auto.  Indeed State Auto has denied throughout this litigation that those figures are correct.  Second, it is not true that State Auto's only defense at trial on this damages claim related to an offset or counterclaim.  To be sure, the main thrust of

---

[90]Boardwalk Mem. in Supp. of Mot., Doc. 354 at 16.

[91]*See* Exs. 16, 20,108.

[92]*See* Doc. 370, Tr. Vol. 7 at 1402.  At one point before trial, Mr. Cockerham offered to stipulate to this amount as the replacement cost of Building 1, however, when asked to put this stipulation in writing, he withdrew the offer.  Doc. 352, In Limine Hrg. Tr. at 107–11. There have been no stipulations in this case on damages.

[93]*Fid. & Deposit Co. of Maryland v. Hartford Cas. Ins. Co.*, 215 F. Supp. 2d 1171, 1194 (D. Kan. 2002).

the trial focused on State Auto's setoff defense for interest earned on the prior payment, but it was not the only basis for which State Auto disputed the amount.  And State Auto's expert agreed with Lesovitz on the revenue portion of the lost business income calculation.  But State Auto disputed the methodology for calculating saved expenses used by Lesovitz—a component of the business income calculation, not of any affirmative defense or counterclaim.  The fact that the jury was likely persuaded by Mr. Bello's business income figures is not sufficient to show that they were readily calculable—indeed Boardwalk presented evidence of these figures, in addition to slightly different figures presented by Mr. Lesovitz.  And the jury's determination did not exactly match Bello's figures.  It was impossible to know with any certainty the amount of business income damages until the jury heard and reviewed all the evidence, including the expert testimony, and drew conclusions from that evidence.  The Court is unable to conclude that either breach of contract claim is liquidated.

Boardwalk next argues that the Court should award prejudgment interest on the basis of State Auto's unreasonable and vexatious delay in payment in this matter; it correctly argues that under the statute the Court may award prejudgment interest on this basis even on an unliquidated amount.[94]  Boardwalk points the Court to the protracted history of this case and the litigation that proceeded it, resulting in a nine-year delay in payment.

In *Continental Insurance Co. v. Wichita Federal Savings & Loan Association*, Judge Crow awarded prejudgment interest on an unliquidated claim to an insured on the basis that the

---

[94] *See, e.g.*, *Lippert v. Angle*, 508 P.2d 920, 927 (Kan. 1973); *Lightcap v. Mobil Oil Corp.*, 562 P.2d 1, 15 (Kan. 1977); *Cont'l Ins. Co. v. Wichita Fed. Sav. & Loan Ass'n*, No. 84-1218-C, 1989 WL 18815, at *7–8 (D. Kan. Feb. 13, 1989).

insurer's failure to pay the claim was an unreasonable and vexatious denial of payment.[95]  Judge Crow cited the following facts in support of this conclusion:

> Continental failed to make a factual investigation as to the merits of Wichita Federal's claim initially, and then again after Wichita Federal submitted its request for reconsideration.  Wichita Federal pointed out in its request for reconsideration the fact that INA had paid a claim based on substantially similar facts.  Continental knew that INA had paid this claim even before Wichita Federal brought it to Continental's attention.  Still, even after Wichita Federal found out what Continental feared it would find out, i.e., payment of the INA claim, Continental failed to make any inquiry into the merits of the claim and continued to deny payment. Continental denied the claim with the knowledge that Wichita Federal would be forced to utilize its resources in lawsuits to pursue its claims against Marine Midland, Comark, and any other party who may have been responsible for Wichita Federal's loss.  The court further notes that Continental did not deposit any funds into court when it filed its complaint for declaratory relief.  Equity requires that prejudgment interest be allowed in this case to fairly and fully compensate Wichita Federal.[96]

Here, the Court is unable to find that the lengthy delay in payment in this case rises to the level of unreasonable and vexatious, as that provision has been construed by the courts.  The insurance coverage issues have been heavily litigated, however, it is undisputed that prior to litigation State Auto tendered partial payments on both insurance claims.  Furthermore, while an argument can certainly be made that State Auto unnecessarily protracted the underlying case with its myriad iterations of fraud allegations, the Court cannot find that it rises to the level of unreasonable and vexatious delay as was found in *Continental Insurance*, or *Lippert*, where no monies were paid when due, including amounts that were admittedly due.  Moreover, this Court has already declined to find that State Auto took unreasonable or vexatious positions in the

---

[95] *Cont'l Ins. Co.*, 1989 WL 18815, at *7.

[96] *Id.*

Missouri Litigation.  Indeed, it prevailed on its alternative claim that the coinsurance provision applies to the replacement cost claim in this case.

While the Court is unable to find that prejudgment interest is mandatory in this case under K.S.A. § 16-201, there are certain circumstances where the Court may award discretionary prejudgment interest under principles of equity.  In *Lightcap v. Mobil Oil Corp.*,[97] the Kansas Supreme Court qualified the unliquidated damages rule by allowing interest in the Court's discretion "when the defendant has had use of the money, the plaintiff has been deprived of the use of the money, and the order is necessary to award full compensation."[98]  Boardwalk urges the Court to exercise its discretion and award prejudgment interest based on the *Lightcap* exception. In exercising discretion, the Court is guided by considerations of fairness and traditional equitable principles.[99]

In *Fidelity & Deposit Co. of Maryland*,[100] Judge Lungstrum discussed at length the qualification announced by the Kansas Supreme Court in *Lightcap*, and explained that it applies under narrow circumstances: when the defendant has knowledge that it possessed money that rightfully belonged to another.[101]

> In sum, the court agrees with F & D that the Kansas Supreme
> Court has carved out an exception to the general rule that prejudgment

---

[97] 562 P.2d 1 (Kan. 1977).

[98] *Farmers State Bank v. Prod. Credit Ass'n of St. Cloud*, 755 P.2d 518, 528 (Kan. 1988) (discussing *Lightcap*, 562 P.2d at 15).

[99] *Ireland v. Dodson*, No. 08-4102, 2011 WL 1234705, at *6 (D. Kan. Mar. 31, 2011) (citing *Wichita Fed. Sav. & Loan Ass'n v. Black*, 781 P.2d 707, 721 (Kan. 1989), *superseded on other grounds by* K.S.A. §§ 9-1133–34).

[100] 216 F. Supp. 2d 1240 (D. Kan. 2002).

[101] *Id.* at 1245.

interest is not appropriate for unliquidated claims. The court, however, disagrees with F & D's characterization of the scope of that exception. The court does not believe that a district court has discretion to award prejudgment interest on garden variety unliquidated claims like those in *Kearney* and *Royal College Shop*. Instead, prejudgment interest is appropriate only in unusual and limited circumstances like those that occurred in *Lightcap* and *Farmers State Bank*. In those two cases the defendant kept and made actual use of money that it was aware belonged to the plaintiff, causing the plaintiff to lose the use of his or her money. In that limited situation, the Kansas Supreme Court has explained that equitable principles permit the district court, in its discretion, to award prejudgment interest on unliquidated claims.[102]

Following Judge Lungstrum's guidance in *Fidelity* that the *Lightcap* exception applies in limited and unusual circumstances where the Defendant kept and made use of money that it was aware belonged to the Plaintiff, the Court finds that this exception applies in this case to the business income claim, but not to the replacement cost claim, as described more fully below.

A.       **Business Income Claim**

On the business income claim, the evidence at trial established that immediately after the October 2005 fire, State Auto hired an independent adjuster, Patrick Bello, to assist it in adjusting Boardwalk's property loss and rental business income loss claims. Bello testified that Boardwalk, through its agent, had provided him with the documentation he needed to adjust the claim. Bello and Boardwalk negotiated and reached an agreement on the appropriate business income loss monthly calculation for a one-year period, but they were not able to reach an agreement on duration. Bello testified that in early 2006, he had figured a monthly business income claim of $18,296.24 for three months and $16,799 for the next nine months. Bello communicated to Shan Hare, the adjuster at State Auto, on February 28, 2006, with details about

---

[102]*Id.* at 1245–46 (footnotes omitted).

his business income loss figures.[103]  He testified that the yearly business income claim for the affected building was $219,600.  On February 9, 2006, State Auto advised Boardwalk's agent that although "for the most part, the figures are firmed up," the business income claim was still under review.[104]  Bello testified that he became aware at some point that State Auto did not, in fact, agree with the figures he had calculated for business income loss in February 2006.  Bello told Hare in March 2006 that Boardwalk's agent was asking about the duration that would be used on the business income claim.[105]

Between November 2, 2005 and February 10, 2006, State Auto paid Boardwalk a total of $150,000 toward Boardwalk's business income losses.  Given the 2006 figures compiled by Bello showing an annual business income loss of $219,600, and the evidence that Bello communicated these figures to State Auto, it is clear that State Auto had knowledge by July 2006 that it owed Boardwalk more than $150,000 in business income losses, yet it paid no more than that amount.  Indeed, on summary judgment, State Auto took the position that the period of restoration was fifteen months.[106]  Not only did State Auto fail to pay with knowledge that it was due, it failed to even communicate with Boardwalk about its reasons for not paying on the business income claim, or that it had reached its own determination on duration.

Nonetheless, without Boardwalk's knowledge, State Auto continued to review and

---

[103]Ex. 39.

[104]Ex. 24.

[105]Doc. 365, Tr. vol. 2 at 347.

[106]Marc Lovrak testified at trial that it was State Auto's position that the period of restoration was no more than twenty-four months.  *Id.* at 538.  On summary judgment the Court found as a matter of law that the period of the Missouri litigation, March 27, 2006–September 8, 2009, extended the restoration period under the Policy.

calculate the business income claim internally.  It had determined that it disagreed with Bello's monthly rental income calculations.  In March 2006, around the time it filed the Missouri litigation, it retained Wilson, an accountant, to review the business income claim and advise State Auto as to the appropriate rental business income, as well as on further documentation to request from Boardwalk.

The Missouri litigation did not resolve nor speak to the business income loss claim.  Yet the 2008 Stipulation provided that the business income claim was not resolved by the Orders in that litigation, and further provided that it was one of several issues that "are not and will not be ripe for adjudication until Boardwalk either elects to rebuild Building #1 or until Boardwalk elects against rebuilding or waives its right to rebuild."[107]  But the fact that the parties agreed that the claim was not "ripe for adjudication" does not negate the fact that the claim had been made in 2005, that State Auto had still not provided a status report to Boardwalk nor explained the delay, or that money was due to Boardwalk under this provision of the Policy.  The Stipulation merely governed the issues left open at the close of the Missouri litigation in the event that a subsequent suit was instituted.  It did not prohibit State Auto from resolving the claim outside of litigation, nor paying an undisputed portion of the claim.

Moreover, State Auto's argument that it was "lulled" into non-payment by the Stipulation is unavailing.  Even after formally electing to rebuild,[108] as contemplated by the

---

[107]Doc. 372, Ex. B.

[108]On February 11, 2010, David L. Rein, counsel for Boardwalk, wrote a letter to Michael D. Cerulo, counsel for State Auto, "confirm[ing] that the parties are treating the letter dated January 26, 2010 to you as Boardwalk's election to rebuild the covered property.  Please let me know if you have a different understanding." Pl. Ex. 68.  Mr. Cerulo acknowledged receipt by letter on February 19, 2010, requesting documentation related to rebuilding the property.  Pl. Exs. 70, 71.

Stipulation, Boardwalk repeatedly attempted to extract information about the status of its business income claim to no avail.  Boardwalk requested information in February 2010[109] and July 2010.[110]  In response to the July request, State Auto for the first time formally requested an exhaustive list of documentation for the years 2004–2007 from Boardwalk in order to calculate amounts owed under the policy.[111]  This is despite the fact that Boardwalk had provided substantial documentation to Bello back in 2005 and 2006 when the claim was being originally adjusted.[112]  From August 2010 through October 2011, Boardwalk responded and produced several sets of documents requested by State Auto.[113]  In conjunction with sending these documents, Boardwalk repeatedly requested a status report on the claim and was repeatedly denied any information about the progress of the claim beyond document requests and statements that State Auto continued to review the claim.[114]  These documents belie State Auto's position in this litigation that its delay in paying on the business income claim was due to Boardwalk's failure to cooperate in furnishing the requested documentation on the business income claim.  Indeed, the jury rejected that affirmative defense, and as described in the Court's ruling on the Rule 50(b) motion, there was sufficient evidence for the jury to find that Boardwalk did in fact cooperate in State Auto's investigation of this claim.  The Court finds that this

---

[109]Ex. 68.

[110]Ex. 74.

[111]Ex. 75.

[112]Doc. 365, Trial Tr. vol. 2 at 345–46.

[113]Pl. Exs. 78, 81, 85, 135.

[114]*See* Pl. Exs. 79, 82, 83.

evidence also supports an equitable award of prejudgment interest for the entire period of delay under the *Lightcap* exception.  There is evidence that money was due to Boardwalk, and that State Auto refused to pay with no explanation, despite its knowledge that it owed Boardwalk under the Policy a sum substantially in excess of the $150,000 advance payment.

State Auto argues that Boardwalk may not recover prejudgment interest on this claim under equitable principles because it failed to mitigate its business income losses by unreasonably investing the $2.1 million advance payment on the property damage claim.  The Court disagrees.  There was no contractual requirement that Boardwalk was required to mitigate its business income losses with that payment.  Nor is there any legal authority for the proposition.  State Auto suggests that one "who seeks equity must do equity,"[115] but the Court finds that Boardwalk did not fail to "do equity" in opting not to further invest the $2.1 million indemnity payment.  As a matter of law, Boardwalk was already penalized for any windfall it obtained from investing this payment because the return on its investment was set off from the actual damages award.

The Court may award discretionary prejudgment interest when necessary to provide full compensation to the Plaintiff.[116]  Here Boardwalk was deprived of its rental business income beginning on July 1, 2006, the date that the lost rental income exceeded the sum of the partial payments and the amounts Boardwalk had earned that were available to pay expenses, and lasting until judgment was entered on July 10, 2014.  By depriving Boardwalk of its business

---

[115]*See Schulte v. Franklin*, 633 P.2d 1151, 1154 (Kan. Ct. App. 1981) (applying maxim to a loan arrangement).

[116]*See Lightcap v. Mobil Oil Corp.*, 562 P.2d 1, 16 (Kan. 1977).

income, State Auto "deprived [Boardwalk] of the opportunity to earn interest on that money."[117]

The period of restoration, during which Boardwalk was entitled to lost business income, was

substantially increased based on State Auto's initiation of litigation in Missouri, and its

subsequent decision not to pay on this claim even after Building 1 was replaced, necessitating

the instant litigation.  While the Court has repeatedly declined to hold that these delays were

vexatious, it has also declined to penalize Boardwalk for these delays.  The Court therefore finds

that Boardwalk shall be made whole for the increased delay due to the resolution of this

insurance litigation.  Principles of equity dictate that Boardwalk will be made whole by an award

of prejudgment interest on the actual damages associated with its business income claim, or

$939,131.44, accruing on July 1, 2006.

### B.       Replacement Cost

State Auto has denied it owed any further property damage payment since it initiated the

Missouri litigation in 2006.  It has consistently taken the position on the replacement cost claim

that Boardwalk was underinsured, and thus, the coinsurance provision operated to reduce any

payment otherwise due under the Policy.  State Auto took instead the position that it overpaid

Boardwalk when it made the advance payment.  Therefore, unlike the business income claim, the

evidence does not suggest that State Auto withheld funds it knew should be paid to Boardwalk,

depriving Boardwalk of the use of such funds.[118]  While the jury disagreed with State Auto's

---

[117]*Redmond v. Hassan*, –B.R.–, 2014 WL 4725798, at *16 (D. Kan. Sept. 23, 2014).

[118]The Court does not find that Boardwalk waived its prejudgment interest claim on the replacement cost
claim by restricting the accrual date in the Pretrial Order.  The Pretrial Order clearly requests prejudgment interest,
and under Fed. R. Civ. P. 54(c), the final amended judgment must grant the relief to which each party is entitled,
even if not included in the pleadings.  The Court follows the lead of other courts in this circuit and district that allow
a Plaintiff to request prejudgment interest, even if not included in the Pretrial Order.  *See, e.g.*, *Dalal v. Alliant
Techsystems, Inc.*, 72 F.3d 136, 1995 WL 747442, at *6 (10th Cir. Dec. 18, 1995); *Rajala v. Gardner*, No. 09-2482,

position, it does not negate the fact that State Auto consistently invoked this position throughout the litigation.  Under such circumstances, the Court cannot find that prejudgment interest should be awarded under equitable principles on this component of the damages award.  The knowledge requirement that was integral to the award of discretionary prejudgment interest in *Lightcap*, as construed by Judge Lungstrum in *Fidelity*, is not present here.  Instead, State Auto contended that it in fact overpaid Boardwalk on the property damage claim.  To the extent that Boardwalk suffered further business income loss or loss of investment income due to the delay in processing the replacement cost claim, the Court finds that the consequential damages award fully compensates Boardwalk for that loss.  Accordingly, the Court will not exercise its discretion to award prejudgment interest on this claim.

### C.    Compound vs. Simple Interest

The Court now turns to Boardwalk's request for compound interest; State Auto argues that only simple interest is appropriate.  It is undisputed that the Kansas statutory rate of interest of 10% applies to determine the award of prejudgment interest on the business income claim.  The cases cited by Boardwalk do not persuade the Court that compound interest should be applied to the 10% rate here; those cases all deal with federal claims.[119]  Moreover, the cases that apply a compound interest rate acknowledge that it more fully compensates the plaintiff

2014 WL 4840771, at *4 (D. Kan. Sept. 29, 2014).

[119]*See, e.g., Am. Nat'l Fire Ins. Co. ex rel. Tabacalera Contreras Cigar Co. v. Yellow Freight Sys., Inc.*, 325 F.3d 924, 937–38 (7th Cir. 2003) ("compound interest is the norm in federal litigation"); *Boggio v. Hartford Life and Acc. Ins. Co.*, No. 07-4067-SAC, 2009 WL 1505536, at *7 (D. Kan. May 28, 2009) (awarding compound interest in ERISA case); *Leidel v. Ameripride Servs., Inc.*, 276 F. Supp. 2d 1138, 1147–48 (D. Kan. 2003) (applying rate set for IRS on overpayments and underpayments on a compound basis to backpay award in Title VII case); *Braintree Labs., Inc. v. Nephro-Tech, Inc.*, 81 F. Supp. 2d 1122, 1138 (D. Kan. 2000) (awarding compound interest in patent case); *Cement Div. Nat'l Gypsum Co. v. City of Milwaukee*, 144 F.3d 1111, 1116 (7th Cir. 1998) (reviewing whether district court applied the appropriate prejudgment interest rate under federal common law principles).

"especially when the interest rate is low, as it is under § 1961."[120]  There is nothing in the Kansas statute, nor in the case law construing the statute, to indicate that the Kansas legislature intended for that 10% interest rate to be compounded.  Indeed, the Court is unable to locate any case awarding prejudgment interest under this statute on a Kansas law claim that compounded interest.  The Court therefore finds that a 10% simple interest calculation is sufficiently high to compensate Boardwalk for the delay in paying the business income insurance proceeds, without punishing State Auto.[121]  According to Boardwalk's calculations, the Judgment should therefore be amended to include an award of $509,900 in prejudgment interest.

## IV.    Motion to Extend Time to Appeal

State Auto seeks a stay of the appeal time under Fed. R. Civ. P. 58(e) until the motion for attorneys' fees is decided so that it may take up one appeal instead of two.  Boardwalk does not oppose this motion so long as State Auto provides adequate security for the Judgment.  State Auto filed a separate motion asking the Court to stay execution of judgment without requiring it to provide security, citing the financial security of the business as adequate security.  It also argues that Boardwalk waives any right to ask for relief beyond what is set forth in the July 10, 2014 Judgment by executing before the postjudgment motions are decided.

The Court grants State Auto's request under Rule 58(e) and orders that Boardwalk's timely motion for attorneys' fees under Rule 54(d)(2) has the same effect under Fed. R. App. P.

---

[120]*Price v. Stevedoring Serv. of Am., Inc.*, 697 F.3d 820, 843 (9th Cir. 2012) (compounding interest on the § 1961 rate in Longshore Act case); *Hillman v. U.S. Postal Serv.*, 257 F. Supp. 2d 1330, 1335 (D. Kan. 2003) (declining to compound interest on a Rehabilitation Act back pay award where the Court applied a 10% interest rate, finding simple interest was sufficient to compensate the plaintiff).

[121]*See, e.g., U.S. Indus., Inc. v. Touche Ross & Co.*, 854 F.2d 1223, 1257 n.50 (10th Cir. 1988) (explaining that the purpose of prejudgment interest is compensatory, not punitive), *overruled on other grounds as recognized in Anixter v. Home-Statek Prod. Co.*, 77 F.3d 1215, 1231 (10th Cir. 1996).

4(a)(4) as a timely motion under Rule 59.  The Court will endeavor to rule on the fee application

and associated motions as soon as practicable.  The Court will hold in abeyance State Auto's

separate motion to stay execution of the Judgment, pending Boardwalk's decision on the Court's

remittitur Order.  If Boardwalk elects remittitur in writing, the Court will promptly enter an

amended judgment to reflect the remittitur and prejudgment interest award.  The Court will then

consider State Auto's motion for stay of execution pending the Court's decision on the

remaining motions associated with Boardwalk's fee request.

**IT IS THEREFORE ORDERED BY THE COURT** that State Auto's Renewed

Motion for Judgment as a Matter of Law (Doc. 360) is **denied**, and State Auto's Motion for New

Trial Pursuant to Rule 59(a) (Doc. 356) is **denied**.

**IT IS FURTHER ORDERED** that Boardwalk's Motion to Amend Judgment under Rule

59(e) to Award Prejudgment Interest (Doc. 353) is **granted**.  If Boardwalk elects remittitur in

writing, the Court will promptly enter an amended judgment to reflect the remittitur and

prejudgment interest award of $509,900.

**IT IS FURTHER ORDERED** that State Auto's Motion to Extend Time to Appeal the

Judgment on the Merits Pursuant to Rule 58(e) of the Federal Rules of Civil Procedure (Doc.

409) is **granted**.

Dated: January 14, 2015

                    S/ Julie A. Robinson
                    JULIE A. ROBINSON
                    UNITED STATES DISTRICT JUDGE