## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| BOARDWALK APARTMENTS, L.C., | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 11-2714-JAR** |
| | ) | |
| STATE AUTO PROPERTY AND | ) | |
| CASUALTY INSURANCE COMPANY, | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

This insurance coverage action was tried to a jury, which found in favor of Plaintiff

Boardwalk Apartments, L.C. ("Boardwalk") on its claims of breach of contract under Kansas

law against Defendant State Auto Property and Casualty Insurance Company ("State Auto").

Before the Court is Plaintiff Boardwalk's Motion for Attorneys' Fees (Doc. 349) that is now

fully briefed.  The Court previously denied State Auto's motions for discovery and to strike one

of the affidavits in support of Boardwalk's attorneys' rates, however, the Court allowed State

Auto to file a motion for leave to supplement its evidence in opposition to the requested rates.

In conjunction with Boardwalk's fee application, the Court also considers (1) State

Auto's Motion for Leave to File Affidavits in Support of its Opposition to the Motion for

Attorneys' Fees and Expenses Out of Time (Doc. 414), and (2) Boardwalk's Motion for Leave to

Supplement its Motion for Award of Reasonable Fees and Expenses (Doc. 411).  As explained

more fully below, Boardwalk's motion for attorneys' fees and expenses is granted in part and

denied in part. It is denied to the extent Boardwalk seeks fees incurred in defending the Missouri

litigation.  It is otherwise granted with some adjustment by the Court for reasonableness, for a

total award of $1,470,949.64 in reasonable attorneys' fees and expenses. State Auto's motion

for leave to file exhibits out of time is denied. Boardwalk's motion to supplement is denied

without prejudice. It may file a single supplemental fee request within 21 days of this Order.

State Auto may respond to the supplemental fee request within fourteen days. No reply shall be

filed.

## I.   Relevant Background

A complete factual background of this case has been recounted in detail in both the

summary judgment Order and in the Court's Order ruling on the merits-based post-trial motions.[1]

The Court incorporates by reference this factual matter to the extent it is relevant to the fee

dispute here. This case arises out of a fire that occurred on October 7, 2005, that destroyed

Building 1, the largest building in the Boardwalk apartment complex. On March 27, 2006, State

Auto filed a declaratory judgment action against Boardwalk in the United States District Court

for the Western District of Missouri (the "Missouri Litigation"), asking for a declaration that it

had paid all amounts owed under its Policy under the Kansas Valued Policy Statute,

K.S.A. § 40-905(a), or in the alternative, that the coinsurance provision applied to limit any

replacement cost coverage. State Auto filed its lawsuit before the period of time provided for in

the Policy expired for replacing or repairing the property. State Auto contended that it paid

$2,128,194.17 to Boardwalk during the course of the claim investigation and that it was entitled

to a setoff and/or credit in the amount of this advance payment against any future sum paid to

Boardwalk under the Policy. After initiating the Missouri Litigation, State Auto made no further

payment to Boardwalk on its business income or property loss claims.

---

[1]Docs. 246, 436.

Boardwalk filed an Answer and Counterclaim,[2] arguing that if the Kansas Valued Policy Statute applied, it was entitled to the entire "Blanket Policy" limit of $7,394,389.74 for the loss of Building 1.  It asserted seven counterclaims: (1) property damage under the Kansas Valued Policy statute; (2) breach of contract for replacement cost coverage; (3) breach of contract—contents; (4) breach of contract—inflation; (5) breach of contract—business income loss; (6) attorneys' fees under K.S.A. § 40-908; and (7) vexatious refusal to pay.[3]

In an Order dated February 15, 2008, United States District Judge Nanette Laughrey ruled on the parties' cross motions for summary judgment.[4]  The court granted summary judgment to State Auto on Boardwalk's counterclaims, "except to the extent Boardwalk requests a declaration that it has a right to replace Building 1, repair Building 4 and recover its lost business under the terms of the policy."[5]  The court granted partial summary judgment to State Auto on the issue of coinsurance, holding that because the Kansas Valued Policy Statute did not apply to this claim, the coinsurance provision applied to potentially reduce Boardwalk's recovery.[6]  The court also ruled that the exclusion for reimbursement for extra costs incurred to comply with modern laws and ordinances was not void against public policy.[7]

The court subsequently vacated its summary judgment ruling with respect to the third and

---

[2]Boardwalk also filed a third-party action against its insurance agent, T.S.A., Inc. d/b/a/ The Sloan Agency ("TSA"), in the alternative, for negligent procurement of insurance, breach of fiduciary duty, and breach of contract.

[3]Doc. 402, Ex. 1.

[4]No. 06-00252-CV-W-NKL, 2008 WL 474333 (W.D. Mo. Feb. 15, 2008).

[5]*Id.* at *8.

[6]*Id.* at *7–8.

[7]*Id.* at *8–9.

fourth counterclaims because State Auto had not specifically sought summary judgment on those claims.  The parties filed cross-motions for summary judgment on those two remaining counterclaims for replacement of lost contents, and for attorneys' fees; Boardwalk also requested that the court retain jurisdiction to enforce the judgment.  As to the contents claim, the court held that Boardwalk was entitled to replacement costs for contents under the policy, however because Boardwalk has not yet replaced the contents, State Auto was not required to pay under the terms of the policy.[8]

As for attorneys' fees under K.S.A. § 40-908, and continuing jurisdiction, Judge Laughrey explained as follows:

> Boardwalk erroneously believes it should be able to recover attorney's fees if it is ultimately shown that the replacement costs were more than the amount originally tendered by State Auto.  However, that claim is not yet ripe.  Boardwalk confuses the Court's declaration that it has a right to replace, which was the necessary converse of State Auto's declaratory judgment claim, with actually prevailing under its breach of contract claims and receiving a right to recover damages.  In fact, the Court held that Boardwalk did not succeed on its breach of contract claims specifically because it had not replaced the property.  Boardwalk, as it admits, has not yet replaced the damaged and destroyed property; therefore, State Auto has not yet refused to pay all of the replacement costs.  There is simply no case or controversy for the Court to adjudicate, and Article III does not extend so far as to allow the Court to "retain" jurisdiction until such a case or controversy arises.  Whether State Auto will pay replacement costs for property that Boardwalk has yet to replace is too speculative and indeterminate at this time.
>
> In addition, Boardwalk requests that the Court not penalize it from bringing its compulsory counterclaims, and that it should receive its attorney's fees.  First, because Boardwalk neither submitted an actual cash value claim nor actually replaced the contents, it cannot be said that there was a breach of contract claim that Boardwalk was required to bring in this declaratory judgment action.  More importantly, however, contrary to Boardwalk's arguments, § 40-908 expressly recognizes that there may be

---

[8]No. 06-00252-CV-W-NKL, 2008 WL 957666, at* 1 (W.D. Mo. Apr. 3, 2008) (citations omitted).

situations where insureds bring suit against an insurance company and prevail, but are still not entitled to attorney's fees because the insurance company has already tendered an amount equal to, or in excess of, the judgment recovered.  This is one of those situations.

If Boardwalk chooses to replace its destroyed property, and if State Auto refuses to pay all of the replacement costs (subject to Policy terms and limits), Boardwalk may bring another breach of contract action and seek attorneys fees. However, that would be a separate action.  Boardwalk is not entitled to its attorney's fees for the current action, either now or in the future, because, under the determinable facts at this time, it cannot recover in excess of the amount already tendered by State Auto.  This action, initiated by State Auto, was based on whether Boardwalk had a right to replace, not whether State Auto improperly refused to pay replacement costs already incurred.  The Court, therefore, declines to retain jurisdiction.[9]

On April 17, 2008, the parties entered into and filed an Agreed Stipulation of Dismissal Without Prejudice.  In the Stipulation, the parties state that they "desire final adjudication on the issues addressed by the Court's Orders, including any appeal, as soon as possible."[10]  They further stipulated: (1) to the issues not resolved by Judge Laughrey's Orders; (2) that the actual cash value of Building 1 at the time of the loss was $1,751,160; (3) that any statute of limitations applicable to the remaining claims shall be tolled for six months after the court's Orders, including any appeals, become final; (4) that Boardwalk has the right to replace Building 1 under the condition that it initiates the process of replacing the destroyed building by formally seeking municipal approval thereof, and proceeds to diligently replace the building within six months of the court's Orders, including any appeals, becoming final; and (5) that failure to do so will constitute a waiver of Boardwalk's right to replacement cost under the Policy and limit its recovery to the actual cash value of Building 1, further obligating it to refund State Auto

---

[9]*Id.* at *3–4.

[10]Doc. 393, Ex. 1.

5

$377,034.17 in excess monies previously paid by State Auto to Boardwalk.

The issues agreed by the parties not to have been resolved by Judge Laughrey included, <u>if</u> Boardwalk elected to rebuild Building 1: (1) the replacement cost of Building 1; (2) the calculation of the coinsurance penalty; and (3) the business income loss, including the period of restoration.  The parties stipulated to the dismissal "without prejudice to and expressly preserving each party's right to reassert any and all remaining claims which one party may have against the other in a court of competent jurisdiction."[11]

On Boardwalk's appeal of the district court's summary judgment orders, the Eighth Circuit Court of Appeals ruled on July 14, 2009, affirming in part and reversing in part and remanding for further proceedings.  The Eighth Circuit affirmed the district court's orders on all issues appealed except its ruling that the exclusion for reimbursement for extra costs incurred in order to comply with modern laws and ordinances was not void against public policy.  On September 8, 2009, the district court vacated its "prior ruling regarding policy provisions limiting coverage for the cost of repair/replacement in order to comply with ordinances . . . [as] void as against public policy."  The Missouri Litigation was finalized when Judgment was entered on September 8, 2009.

Boardwalk ultimately replaced Building 1 and this Court found as a matter of law in ruling on summary judgment that it replaced Building 1 by the deadline provided in the parties' 2008 Stipulation.  Boardwalk notified State Auto that the City of Lawrence had issued Certificates of Occupancy in July 2011.

On December 11, 2011, Boardwalk initiated this action to recover its lost business

---

[11]*Id.* at 2.

income under the Policy.  It filed an Amended Complaint on October 5, 2012, adding the property damage claim, as well as alternative tort claims for negligent claims handling and misrepresentation.  Boardwalk contended that State Auto formally denied the replacement cost claim in a proposed pleading filed in this lawsuit.  The Court ruled on several matters on cross-motions for summary judgment, narrowing the issues to be decided at trial.  Beginning on June 24, 2014, this case was tried to a jury.  The jury returned verdicts in favor of Boardwalk on both breach of contract claims, calculating damages for each claim and awarding consequential damages.  This Court thereafter ruled on the parties' post-trial motions, ordering remittitur of the consequential damages award as an alternative to a new trial, and awarding Boardwalk prejudgment interest on the business income claim.  An Amended Judgment was entered on January 16, 2015 for $4,797,479.20.[12]  The Court has ruled that under Fed. R. Civ. P. 58(e), Boardwalk's motion for attorneys' fees has the same effect under Fed. R. App. P. 4(a)(4) as a timely motion under Rule 59.

Boardwalk now seeks its reasonable attorneys' fees incurred on the insurance claims associated with the October 7, 2005 fire, dating back to February 1, 2006 when Patrick Bello, the independent adjuster hired to adjust the claims immediately after the fire, reached an agreement with Boardwalk on the monthly business income loss.  Boardwalk has submitted its timesheets under seal, as well as a comprehensive amount of evidence in support of its timekeepers' rates and the hours expended on this litigation.

The Court previously ruled on a number of issues raised by State Auto in conjunction with its response to the fee motion.  The Court denied State Auto's motion for discovery of (1)

---

[12]Doc. 438.

the engagement letter between Boardwalk and counsel's law firm, Husch Blackwell; (2) invoices establishing that the fees were actually paid by Boardwalk; (3) unredacted and broken down billing entries; and (4) investigation into the "previously undisclosed expert opinions" of Kevin Bielawski.  The Court also declined State Auto's request to strike the Bielawski affidavit as an undisclosed expert report.  The Court found it unremarkable that a party moving for attorneys' fees would submit the affidavit of a law firm representative tasked with setting the firm's rates, which relied upon a third-party survey of market rates to which the firm subscribed.  The Court found that State Auto should have been on notice that Boardwalk's attorneys would submit affidavits in support of its attorney fee request, but out of an abundance of caution, allowed State Auto to file no later than November 14, 2014, a motion for leave to submit rebuttal affidavit(s), or other exhibits out of time on the issue of the reasonableness of applicable rates in this case. State Auto filed its motion to supplement out of time by the November 14, 2014 deadline, attaching four attorney affidavits regarding the rates charged in the Kansas City market for insurance cases, and commenting on appropriate staffing levels for such cases.

Also in November, Boardwalk filed a motion to supplement its fee request for work expended from August 1, 2014 through October 31, 2014: (1) researching and briefing its motion for an award of prejudgment interest; (2) preparing its fee request; (3) opposing State Auto's fee-related motions filed in September 2014; and (4) preparing for oral argument on the post-trial motions.

## II.     Discussion

### A.     Entitlement to Attorneys' Fees

In Kansas, attorneys' fees cannot be granted without statutory authority or by

agreement.[13]  Boardwalk argues that it is entitled to its reasonable attorneys' fees incurred in

obtaining the Judgment in this matter under K.S.A. §§ 40-908 and 40-256, and under the Kansas

common law.  State Auto responds that while Boardwalk is entitled to attorneys' fees under

K.S.A. § 40-908, it is not entitled to attorneys' fees under § 40-256 or the common law.

Moreover, State Auto urges that Boardwalk should not be able to recover its fees and expenses

incurred in the Missouri litigation.  As described in detail below, the Court finds that Boardwalk

is entitled to its reasonable attorneys' fees incurred in the Kansas litigation only, pursuant to

K.S.A. § 40-908.  It is not entitled to fees under either K.S.A. § 40-256 or the Kansas common

law.

### 1.      K.S.A. § 40-908

Under K.S.A. § 40-908,

> That in all actions . . . in which judgment is rendered against any
> insurance company on any policy given to insure any property in this state
> against loss by fire, . . . the court in rendering such judgment shall allow
> the plaintiff a reasonable sum as an attorney's fee for services in such
> action including proceeding upon appeal to be recovered and collected as
> a part of the costs: *Provided, however*, That when a tender is made by
> such insurance company before the commencement of the action in which
> judgment is rendered and the amount recovered is not in excess of such
> tender no such costs shall be allowed.

Boardwalk has obtained a judgment against State Auto on its insurance policy, which insured its

property and business income against loss by fire.  The amount of the judgment is in excess of

the amount that State Auto tendered in 2006.  Therefore, under K.S.A. § 40-908, Boardwalk is

entitled to its reasonable attorneys' fees "for services in such action including proceeding upon

appeal."

---

[13]*Johnson v. Westhoff Sand Co.*, 135 P.3d 1127, 1135 (Kan. 2006).

State Auto argues that Boardwalk is not entitled to fees incurred during the Missouri litigation under this statute.  It urges that such fees were incurred in a separate case where attorneys' fees have already been denied, and the Court is bound by res judicata, collateral estoppel, and the law of the case doctrine from reconsidering Judge Laughrey's decision to deny attorneys' fees in that case, which was affirmed by the Eighth Circuit on appeal.

The Court agrees with State Auto that Boardwalk is not entitled to fees incurred during the Missouri litigation under this statute.  First and foremost, a plain reading of the statute makes clear that Boardwalk may recover attorneys' fees "for services in *such action*."[14]  The parties disagree about whether liberal or strict rules of construction apply to this attorneys' fees statute. Boardwalk urges the Court not to strictly construe the "such action" language in this statute because, "when the interpretation of a statute (not penal in nature) according to the exact and literal import of its words would defeat the manifest purpose of the legislature in its enactment, it should be construed according to its spirit and reason disregarding as far as may be necessary, the strict letter of the law."[15]  Boardwalk argues that a fair reading of the statute as applied in this case, is that Boardwalk should be compensated for the "entirety of its 'effort' to obtain its Policy benefits in full after it was compelled to bring claims against State Auto—from 2006 to the present."

The Court does not find that § 40-908 can be fairly read as broadly as Boardwalk urges. First, Boardwalk was not compelled to bring claims against State Auto in 2006, it was compelled to bring claims in 2011.  Judge Laughrey ruled that Boardwalk's counterclaims in the Missouri

---

[14]K.S.A. § 40-908 (emphasis added).

[15]*Wolf v. Mutual Benefit Health & Acc. Ass'n*, 366 P.2d 219, 226 (Kan. 1961).

litigation were not compulsory and were not ripe.  Second, Boardwalk points to no evidence that

the legislature intended § 40-908 to encompass all actions related to the one in which judgment

is ultimately rendered.[16]  The Court finds that the plain meaning of the term "such action," refers

to the action in which the judgment was rendered.  The only judgment in this litigation that

awarded Boardwalk its replacement costs and lost business income was this action.

Moreover, the decisions rendered in the Missouri litigation preclude an award of fees for

time spent on that case.  In the Missouri litigation, Boardwalk sought attorneys' fees under

K.S.A. § 40-908.  The court denied Boardwalk's claim, finding that a determination of its right

to replace did not equate to a right to recover damages, an inquiry for a separate lawsuit after

Boardwalk actually replaced the property.[17]  Indeed, in the Missouri litigation, the Court granted

summary judgment in favor of State Auto on Boardwalk's breach of contract counterclaims,

except to the extent it requested a declaration that it had a right to replace Building 1, repair

Building 4, and recover its lost business income even though the time for doing so under the

Policy had elapsed.[18]  It later found that those counterclaims were not compulsory counterclaims

because they were not yet ripe; they would only be ripe after Boardwalk replaced Building 1.

Under Kansas law, the doctrine of res judicata precludes relitigation of previously

litigated claims and requires four elements: (1) same claim; (2) same parties; (3) claims that were

or could have been raised; and (4) a final judgment on the merits.[19]  The Court finds that res

---

[16]Boardwalk's citation to a Washburn Law Journal article describing the characteristics of attorney fee statutes does not help the Court determine the legislature's intent in passing this statute.

[17]2008 WL 957666, at *3.

[18]2008 WL 474333, at *8.

[19]*Cosgrove v. Kan. Dep't of Soc. & Rehab. Servs.*, 744 F. Supp. 2d 1178, 1184 (D. Kan. 2010).

11

judicata applies to Boardwalk's claim for fees incurred in the Missouri litigation under

K.S.A. § 40-908.  Boardwalk advanced the same claim in that case—that it should be able to

recover attorneys' fees for time spent during that litigation if it is ultimately determined that the

replacement cost of Building 1 is more than the amount tendered by State Auto under

K.S.A. § 40-908.  That case also involved the same parties.  Boardwalk raised the same breach

of contract claims here as counterclaims in that case, and sought attorneys' fees based on the

limited ruling by Judge Laughrey in its favor on those claims.  There was a final judgment in that

case on the issue of attorneys' fees.  Unlike the issues itemized in the 2008 Stipulation, the issue

of attorneys' fees was decided by Judge Laughrey and affirmed by the Court of Appeals, a

decision rendered after the 2008 Stipulation.

Boardwalk argues that Judge Laughrey's decisions are not dispositive in this case for

several reasons: (1) the parties agreed to "continue the dispute" in their 2008 Stipulation; (2)

Judge Laughrey only ruled that the breach of contract counterclaims were not ripe; and (3) the

Eighth Circuit left the door open for an award of attorneys' fees.  The Court disagrees that a fair

reading of the Stipulation and decisions in the Missouri litigation contemplated a retroactive

award of fees in that case if it is ultimately determined that State Auto's judgment exceeds the

amount tendered under K.S.A. § 40-908.

First, there is no provision in the 2008 Stipulation about Boardwalk's request for

attorneys' fees.  While the parties agreed that the counterclaims in that case—the breach of

contract claims in this case—were not "ripe for adjudication," as this Court has previously ruled,

the Stipulation did not mandate that the parties file a second lawsuit.  The Stipulation merely

preserved the parties' rights to refile a case on the issues agreed to be left open.  Of course, after

12

the Stipulation was filed, Boardwalk appealed Judge Laughrey's summary judgment orders, including her order that "Boardwalk is not entitled to its attorney's fees for the current action, either now or in the future, because, under the determinable facts at this time, it cannot recover in excess of the amount already tendered by State Auto."[20]  The Eighth Circuit affirmed this ruling on attorney's fees.[21]

The Court reads Judge Laughrey's Order as precluding any future award of fees incurred by Boardwalk in that case.  She explained that there had not yet been a breach of contract since Boardwalk had not yet replaced the property, a requirement under the Policy.  And she explained that if Boardwalk chose to replace the property, and if State Auto refused to pay, then Boardwalk could bring another lawsuit to recover its replacement cost, "and seek attorneys fees."[22]  But she made clear that such an action would be separate from that lawsuit and that Boardwalk is not entitled "now or in the future" to attorneys' fees incurred in that action.[23]  The Eighth Circuit ruled that "[t]he district court correctly ruled on attorney fees."[24]

Boardwalk argues that there is a policy basis for allowing fees under these circumstances—it otherwise provides a disincentive for parties to voluntarily dismiss actions out of fear that they will waive a claim of attorneys' fees.  The Court does not view its ruling so broadly.  Here, we have a prior case where a request for attorneys' fees was made and denied.  In this subsequently-filed action, the same party requested the same fees again.  The 2008

---

[20]*State Auto I*, 2008 WL 957666, at *3.

[21]572 F.3d at 519.

[22]*State Auto I*, 2008 WL 957666, at *3.

[23]*Id.*

[24]572 F.3d at 519.

Stipulation does not speak to the issue of attorneys' fees, notwithstanding the fact that it itemizes every other issue the parties agreed had not be adjudicated.  As described below, Boardwalk could have attempted to argue that it was entitled to fees in the declaratory judgment action under the Kansas common law, a question that would have been properly addressed by Judge Laughrey as the presiding judge in that action.  Nor did Boardwalk claim that its attorneys' fees and costs in the Missouri action were consequential damages in this action.  The Court does not find that under the unique circumstances of this case, its denial of attorneys' fees incurred during the Missouri litigation that preceded this case would disincentivize parties in the future from entering into voluntary dismissals.

Of course, as contemplated by the parties when they entered into the 2008 Stipulation, our case did present the ripe question of whether Boardwalk could recover under the insurance Policy in an amount that exceeded what State Auto had already tendered because by the time this case was filed, Boardwalk had replaced Building 1.  The Court has entered judgment against State Auto on the verdict and on the Court's legal rulings, in a sum far in excess of the 2006 indemnity payments.  This judgment certainly entitles Boardwalk to its reasonable attorneys' fees incurred during this action, the Kansas litigation, but to the extent Boardwalk seeks fees under K.S.A. § 40-908 incurred during the Missouri litigation, the Court denies its request.

### 2.      K.S.A. § 40-256

Under this statute, an insured may recover attorneys' fees if the Court finds that the insurer "has refused without just cause or excuse to pay the full amount of [the] loss."[25]  Whether

---

[25]K.S.A. § 40-256.

the insurer has refused to pay without just cause or excuse depends on the facts of each case.[26]
"[I]f a bona fide and reasonable factual ground for refusing to pay a claim exists, attorney fees
are not awardable."[27]  Moreover, denying payment "where not arbitrary, capricious, or in bad
faith will not give rise to an award of attorney fees."[28]

The Court finds that State Auto advanced legitimate, albeit unsuccessful, grounds for
refusing to pay the claims asserted in this action.  On the property damage claim, State Auto
asserted and continues to assert that coinsurance should have applied to reduce Boardwalk's
recovery.  The application of coinsurance in this case involved difficult and highly contentious
issues.  The Court was required to interpret the terms of the Policy in light of previous rulings in
the Missouri litigation.  The Court cannot find that it was unreasonable for State Auto to take the
position that coinsurance applied, nor that its position was arbitrary, capricious, or made in bad
faith.

State Auto further argued that the business income claim was properly delayed based on
Boardwalk's failure to provide it with certain evidence of its investment of the indemnity
payments, and because the parties disagreed on the duration of the payment, as well as the saved
expenses that must be part of the business income calculation.  The Court ruled on summary
judgment that the interest income that was earned on the indemnity payment could offset the
business income award, a determination supported by case law.  The question for the jury at trial
was the appropriate calculation of that award.  While the Court disagreed that State Auto's

---

[26]*Allied Mut. Ins. Co. v. Gordon*, 811 P.2d 1112, 1125 (Kan. 1991).

[27]*Id.*; *see also Glickman, Inc. v. Home Ins. Co.*, 86 F.3d 997, 1002–03 (10th Cir. 1996).

[28]*Clark Equip. Co. v. Hartford Acc. & Indem. Co.*, 608 P.2d 903, 207 (Kan. 1980).

method of calculating interest income was reasonable, the fact that it sought a reduction for this earned interest was not unreasonable.  Moreover, given the rulings in the Missouri litigation, and the complicated 2008 Stipulation entered into between the parties, it was not unreasonable for State Auto to argue that the period of restoration was shorter than that argued by Boardwalk. The Court cannot find that State Auto refused to pay these claims without just cause or excuse.

### 3.      Kansas Common Law

Boardwalk next claims that it is entitled to attorneys' fees under the Kansas common law, pointing to a line of cases that establish an insurance exception to the American rule that attorney fees can only be awarded by statute or agreement.[29]  But the cases upon which Boardwalk relies do not apply under the circumstances of this case—a case initiated by Boardwalk, the insured, claiming State Auto breached the insurance contract.

*Farm Bureau Mutual Insurance Co. v. Kurtenbach ex rel. Kurtenbach* was a declaratory judgment action filed by an insurance company against its insureds, seeking a determination that it had no duty to defend or pay any judgment under a Farm Master policy after a collision between a motorcycle operated by the insureds' son and a vehicle driven by a third party.[30]  The trial court awarded attorneys' fees under K.S.A. § 40-256; the Kansas Court of Appeals found while this decision was in error, fees should be awarded under the common law.[31]  In upholding the Kansas Court of Appeals' ruling, the Kansas Supreme Court discussed at length its prior decisions on this issue, and held:

---

[29]*Farm Bureau Mut. Ins. Co. v. Kurtenbach ex rel Kurtenbach*, 961 P.2d 53 (Kan. 1998);  *Missouri Med. Ins. Co. v. Wong*, 676 P.2d 113 (Kan. 1984); *Upland Mut. Ins., Inc. v. Noel*, 519 P.2d 737 (Kan. 1974).

[30]*Farm Bureau Mut. Ins. Co.*, 961 P.2d at 54.

[31]*Id.* at 61.

Consistent with our decisions in *Upland* and *Wong*, we therefore
hold that where an insurer denies coverage and the duty to defend
brings a declaratory judgment action against the insured to determine that
issue, the insured may recover his or her attorney fees incurred in the
defense of the declaratory judgment action if it is determined as a result of
that action that there is coverage.  The same rule is applicable where an
insurer agrees to assume the duty to defend under a reservation of rights,
but before the underlying matter is resolved brings a declaratory judgment
action seeking a determination that no duty to defend or coverage exists.

The availability of expenses and attorney fees in such a situation is
necessarily dependent on the existence of coverage.  If it is determined in
the declaratory judgment action that no coverage exists under the policy,
the fees and expenses incurred by the insured are his or her own expense.
If no coverage exists, the insurer is without obligation to either defend or
to pay for any judgment rendered.  Neither the insurance policy itself nor
any statute in this state would require the insurer to pay for other than its
own expenses and fees in such declaratory judgment action.

However, if it should be determined that coverage exists, one may
conclude that the insured was compelled to expend his or her own funds in
litigation expenses to obtain the benefit of his or her bargain with the
insurer.  If these expenses are not reimbursed to the insured, the insured
fails to obtain a substantial benefit already paid for under the policy: the
defense of the claim.[32]

Boardwalk suggests that this line of cases applies to the insured in any case where the

insurer "guesses wrong" about its contractual duty to defend or indemnify.  Boardwalk ignores

the explicit language in *Kurtenbach* and *Upland* that the rule applies where the insurer denies

both coverage and the duty to defend, or where it agrees to defend with a reservation of rights,

and then brings a declaratory judgment action before the underlying matter is resolved.  This

case involves only coverage; there is no duty to defend at issue.

Moreover, the cases applying this rule are all declaratory judgment actions brought by

---

[32]*Id.* at 64 (discussing *Upland Mutual Ins., Inc. v. Noel*, 519 P.2d 737 (Kan. 1974) and *Missouri Med. Ins. Co. v. Wong*, 676 P.2d 113 (Kan. 1984)) (citations omitted).

the insurer.[33]  This suit was brought by Boardwalk under a breach of insurance contract theory,

for which attorneys' fees are provided by statute.  The Missouri litigation was a declaratory

judgment action brought by State Auto, in which Boardwalk prevailed on its claim that it had a

right to replace its destroyed building, subject to coinsurance.  The Court can find no authority

for a retroactive award of fees by a later Court that is called upon to determine coverage in a

breach of contract action brought by the insured after the insurer's declaratory judgment action

has been resolved.  The Court therefore cannot apply this common law rule to allow Boardwalk

to obtain fees in the instant matter.  And the Court is unable to find any authority for the

proposition that the rule could be applied to the fees incurred in the Missouri litigation on a

retroactive basis.  Therefore, Boardwalk is not entitled to its reasonable attorneys' fees under

the Kansas common law.

### 4.    Recoverable Time Period

Having determined that Boardwalk can recover its fees incurred in this action, the Court

must determine the date on which pretrial preparation began.  Work done before the complaint

is filed may be compensable, so long as the work was "both useful and of a type ordinarily

necessary" to achieve the final result obtained.[34]  Typically, under this standard, "pre-complaint

---

[33]*See, e.g.*, *U.S. Underwriters Ins. Co. v. City Club Hotel, LLC*, 822 N.E.2d 777, 780 (N.Y. 2004) ("an insured who prevails in an action brought by an insurance company seeking a declaratory judgment that it has no duty to defend or indemnify the insured may recover attorneys' fees regardless of whether the insurer provided a defense to the insured."); *Hegler v. Gulf Ins. Co.*, 243 S.E.2d 43, 444 (S.C. 1978); *Aetna Cas. & Surety Co. v. Pitrolo*, 342 S.E.2d 156, 159–60 (W. Va. 1986); *Collier v. MD-Individual Prac. Ass'n, Inc.*, 607 A.2d 537, 544–45 (Md. 1992) (denying insured's request to extend exception to American rule beyond declaratory judgment and assumpsit actions with liability insurers who breach the duty to defend or pay the cost of defense); *ACMAT Corp. v. Greater N.Y. Mut. Ins. Co.*, 932 A.2d 697, 702–08 (Conn. 2007) (summarizing approaches taken by state courts); *Wilkinson v. Citation Ins. Co.*, 856 N.E.2d 829, 838–40 (Mass. 2006) (limiting exception to the duty to defend).

[34]*Webb v. Bd. of Educ. of Dyer Cnty., Tenn.*, 471 U.S. 234, 243 (1985); *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 561 (1986).

18

investigation, legal research and informal discovery relevant to developing the theory of the case is properly recoverable."[35]  Boardwalk argues that under this line of authority, it should be able to recover time spent on the Missouri litigation as well as all time spent in between the two lawsuits.  The Court cannot find that a fair reading of this authority would include time spent on the Missouri litigation.  This authority contemplates application to work performed in clear anticipation of the lawsuit for which fees are awarded.  The Missouri litigation ended on September 8, 2009, and given the Court's rulings above, no fees should be recovered prior to this date.  The Court must therefore determine at what point Boardwalk's attorneys began work that was both useful and necessary to recover in this case.

Boardwalk presents evidence that between 2009 and 2011, it incurred fees because State Auto insisted that all communications go through its attorneys, and that its attorneys engaged in research on issues left open by the 2008 Stipulation that ultimately made its way into summary judgment briefs, in particular, research concerning its consequential damages theory.  Mr. Fleischer's affidavit provides some context as to the scope of his attorneys' engagement after the Missouri litigation ended.  He stated that Boardwalk took steps to reconstruct Building 1 in October, 2009, soliciting bids and obtaining a loan to fund the reconstruction.  He attests that Boardwalk does not seek fees for these efforts.  In early 2010, he asked his attorneys to settle the business income claim based on Patrick Bello's 2006 calculations, or to state its position on that claim.  In early 2010, State Auto demanded twelve categories of extensive documentation in order to support the business income claim.  Boardwalk subsequently produced about 800 pages of documents to support the business income claim.

---

[35] *See Lucas v. White*, 63 F. Supp. 2d 1046, 1058–59 (N.D. Cal. 1999).

The Court has reviewed the time sheets submitted by Boardwalk and finds that many of the 2009 and early 2010 entries pertain to the Missouri litigation—counsel's efforts to understand and organize the rulings in that case.  Also, there are many entries relevant to the replacement cost claim that would not become ripe until Building 1 was actually replaced.  Moreover, the Court cannot find that litigation was a forgone conclusion in 2009, such that any research conducted during that period should be considered part of this litigation.

This case was initially filed in 2011 with a single claim for lost business income.  The Court finds that the efforts expended by Boardwalk's counsel to repeatedly produce supporting documentation to State Auto on the business income claim was useful and necessary to the results obtained.  Indeed, State Auto took the position throughout this lawsuit that Boardwalk was required under the terms of the Policy to cooperate in the investigation of this claim by producing all documentation sought.  In reviewing counsel's timesheets, the Court finds that Boardwalk began responding to State Auto's multiple requests for such documentation in August 2010.  From August 2010 through October 2011, Boardwalk responded and produced several sets of documents requested by State Auto in support of the business income claim.[36]  The Court finds that the time Boardwalk's attorneys expended beginning on August 25, 2010, was compensable pretrial work related to the business income claim alleged in the original Complaint.  And soon after, Boardwalk began work necessary for the replacement cost claim asserted in the Amended Complaint.  The Court therefore will proceed to determine Boardwalk's reasonable attorneys' fees and expenses dating back to August 25, 2010.

---

[36]Pl. Trial Exs. 78, 81, 85, 135.

**5.      Boardwalk's Motion to Supplement**

On November 14, 2014, Boardwalk moved to supplement its fee request to include ongoing fees and expenses since the time of its original memorandum in support of the fee request that was filed on September 5, 2014.  The fees sought in the supplemental motion include time spent preparing the briefing on its request for prejudgment interest, preparing its memorandum in support of the fee request, opposing the various fee-related motions filed by State Auto seeking discovery and to strike one of Boardwalk's affidavits, researching and preparing briefing on other post-judgment motions, and preparing for the November 25, 2014 oral argument.  These supplemental fees were incurred between August 1 and October 31, 2014.

State Auto objects to supplementation, arguing that D. Kan. Rule 54.2 does not provide for supplementation, and argues that it must be allowed to respond to any supplemental fee request in writing.  It suggests that allowing Boardwalk to supplement its fee request on an ad hoc and piecemeal basis is unfair and contrary to judicial efficiency and economy.

The Court finds that Boardwalk is entitled to all reasonable fees and expenses incurred in this lawsuit under § 40-908, including time spent on post-trial motions and litigating the request for attorney fees.[37]  The Court declines to penalize Boardwalk for timely submitting its memorandum in support of attorneys' fees.  However, the Court will grant State Auto's alternative request to consider a single supplement to the original fee request in the interest of judicial economy, with certain provisions.  First, this ruling will have no effect on the Court's prior ruling that the original motion under Rule 54 will abate the appeal time.  The supplemental fee request will be decided collateral to the Second Amended Judgment.  Second, while the

---

[37]*See, e.g.*, *Johnson v. Westhoff Sand Co., Inc.*, 135 P.3d 1127, 1143 (Kan. 2006); *Snider v. Am. Family Mut. Ins. Co.*, 298 P.3d 1120, 1131–32 (Kan. 2013).

Court finds that State Auto should have a full and fair opportunity to respond to the specific fees

sought in the supplemental motion, the Court expects the argumentation on these supplemental

fees to be extremely brief in comparison to the instant motion, and to focus primarily on any

arguments not already raised and addressed by the Court's reasonableness rulings below.[38]

Therefore, Boardwalk's motion for leave to supplement is granted in part and denied in part.  It

shall file a single supplemental motion for attorneys' fees within 21 days of this Order for all

compensable work performed since August 1, 2014, attaching supplemental time sheets and any

other necessary exhibits that are not already included in the original motion.  This motion shall

not exceed five (5) pages in length.[39]  State Auto may file a response to this supplemental

motion within fourteen days.  The response shall not exceed ten (10) pages in length.  There

shall be no further briefing.

### B.      Duty to Meet and Confer

The Court has reviewed the filings and finds that the parties are unable to reach an

agreement about the attorneys' fee request in this matter and that Boardwalk fulfilled its duty to

confer pursuant to Rule 54.2.  The Court proceeds to determine a reasonable fee award.

### C.      Reasonableness of Attorneys' Fees

### 1.      State Auto's Motion for Leave to Supplement

In its memorandum in support of attorneys' fees and expenses, Boardwalk submitted

---

[38]For example, the Court is ruling on State Auto's complaints of block billing, and on the reasonable rates charged by Boardwalk's attorneys.  The Court will apply these rulings to any supplemental fee request.  While State Auto may certainly incorporate by reference its objections again in order to preserve them for the record, a lengthy rehash of such arguments is not welcome.  The supplemental response should focus on any arguments specific to the supplemental fee request that have not been addressed by this Order.

[39]The page limit does not apply to supporting documentation attached to the motion.

several affidavits and other exhibits to support its requested rates.  Boardwalk submitted the

Bielawski affidavit and supporting documentation in an effort to show that the Husch Blackwell

rates are in line with rates customarily charged in the State of Missouri, and Midwest region.

Bielawski is a representative of the Husch Blackwell law firm responsible for researching the

market and setting rates for the firm's attorneys.  The Court explained in denying State Auto's

motion to strike this affidavit that, in the Court's experience, this is precisely the sort of

evidence fee applicants submit in support of their fee requests, which are then typically rebutted

by affidavits or other objective evidence submitted by the non-moving party.  But State Auto

did not attach evidence to its memorandum in opposition to rebut the Husch Blackwell

timekeepers' rates.  Instead, State Auto took the position that the Bielawski affidavit was an

undisclosed expert opinion and unsuccessfully sought to strike it.  In denying State Auto's

motion to strike, the Court stated that, out of an abundance of caution, it would entertain a

motion for leave to submit rebuttal affidavit(s) or other exhibits out of time on the issue of the

reasonableness of applicable rates in this case.  State Auto has now filed a motion for leave to

submit additional documentation in opposition to Boardwalk's fee request (Doc. 414).

 State Auto incorrectly identifies the standard to be applied when a party moves to file

out of time.  Under D. Kan. Rule 6.1(a):

> All motions for an extension of time to perform an act required or allowed
> to be done within a specified time must show:
> (1) whether there has been prior consultation with other parties and the
> views of other parties;
> (2) the date when the act was first due;
> (3) if prior extensions have been granted, the number of extensions
> granted and the date of expiration of the last extension; and
> (4) the cause for the requested extension.
> Parties must file the motion before the specified time expires.  <u>Absent a
> showing of excusable neglect, the court will not grant extensions</u>

requested after the specified time expires.[40]

Excusable neglect is a somewhat elastic concept and is not limited strictly to omissions caused by circumstances beyond the control of the movant.[41]  On the other hand, "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect."[42]  In determining whether neglect is excusable, the court should consider "all relevant circumstances surrounding the party's omission," including four specific factors: (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith."[43]  Perhaps the single most important factor in determining whether neglect is excusable is fault in the delay.[44]  Whether the moving party's underlying claim is meritorious should also be taken into consideration.[45]  Further, "[a] court may take into account whether the mistake was a single unintentional incident (as opposed to a pattern of deliberate dilatoriness and delay), and whether the attorney attempted to correct his action promptly after discovering the mistake."[46]

Here, the danger of prejudice to the opposing party is high.  State Auto submits these

---

[40]D. Kan. R. 6.1(a) (emphasis added).

[41]*Pioneer Inv. Servs. Co. v. Brunswick Assocs. L.P.*, 507 U.S. 380, 391–92 (1993).

[42]*Id.* at 392.

[43]*Id.* at 394–95; *see also Bishop v. Corsentino*, 371 F.3d 1203, 1206–07 (10th Cir. 2004).

[44]*Jennings v. Rivers*, 394 F.3d 850, 856 n.5 (10th Cir. 2005) (citing *United States v. Torres*, 372 F.3d 1159, 1163 (10th Cir. 2004)).

[45]*Id.* at 857 (citing *Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.*, 715 F.2d 1442, 1444–45 (10th Cir. 1983)).

[46]*Id.* (citing *Hancock v. Okla. City*, 857 F.2d 1394, 1396 (10th Cir. 1988)).

affidavits after the reply was filed, with no opportunity for Boardwalk to respond. State Auto should have been on notice that its opposition could and should respond to the rates requested by Boardwalk, whether or not its motions to strike and for discovery were granted. To be sure, the Bielawski affidavit and supporting exhibits are not the only items of evidence submitted by Boardwalk to support the requested rates. The length of the delay does not weigh into the Court's analysis given the Court's invitation to file the instant motion for leave. The reason for the delay weighs in favor of Boardwalk; State Auto has made clear in its motion that it made a deliberate decision not to submit evidence to support its opposition to the rates charged by Boardwalk's attorneys. State Auto argues that it was not required to file affidavits or other evidence in opposing Boardwalk's fee request, which suggests to the Court that the omission was a deliberate strategic decision on State Auto's part and not a mistake. Instead, State Auto attempted to have the Bielawski affidavit stricken, challenged the remaining affidavits as biased, and opted not to provide its own evidence of reasonable rates. While the Court does not find that State Auto acted in bad faith, the decision to omit this evidence from its original response brief was certainly within the reasonable control of State Auto. Indeed, State Auto makes clear that it was a deliberate strategic decision.

Taking into account all of the *Pioneer* factors, the Court denies State Auto's motion for leave to file, as no excusable neglect is present as required by Fed. R. Civ. P. 6(b)(1)(B) and D. Kan. Rule 6.1(a). The Court simply cannot find that this was an unintentional mistake or that the prejudice to Boardwalk in allowing this supplementation is outweighed by State Auto's good faith. State Auto presumes that by allowing it to file the instant motion for leave, the Court indicated it would also grant the motion. But State Auto misunderstands the Court's prior Order,

which merely allowed it to make the showing of excusable neglect required to file its exhibits out of time.  As described in this Order, the motion fails to establish excusable neglect.  To the contrary, it establishes that State Auto continues to believe it need not file such exhibits at all.

State Auto also argues that the motion must be granted to ensure it receives due process—access to all of Boardwalk's evidence in support of the fee request.  But of course State Auto had access to all of this evidence when it responded to Boardwalk's fee request, which was not due until 14 days after the memorandum was filed.[47]  State Auto did not seek an extension of time to respond to the fee request, despite its concomitant requests to strike and for discovery.[48]  The Court finds that State Auto was afforded its full due process in responding to the attorneys' fee request in this matter.

Although the Court denies State Auto's motion to supplement its fee request, the Court has nonetheless reviewed the attached affidavits in conjunction with its analysis of the rates charged by Boardwalk's attorneys.  As described below, the Court finds that they would not change the Court's findings below that the Husch Blackwell standard hourly rates are reasonable.[49]

### 2.     Reasonableness Standard

As already discussed, the Court finds that an award of attorney fees and expenses is mandatory in this case for all time spent on <u>this</u> litigation.  Boardwalk requests a total of

---

[47]D. Kan. Rule 54(e).

[48]These motions and the response brief were all filed on September 19, 2014.  Docs. 393, 395, 397.

[49]State Auto seeks to supplement its opposition with four affidavits by attorneys who attest that Boardwalk's rates are unreasonable.  These affidavits go further though.  They also opine on staffing levels.  The Court agrees with Boardwalk that even if the Court granted the motion to supplement out of time, these opinions are outside the scope of subject matter for which the Court allowed State Auto to request supplementation.  Evidence on the staffing issue should have been presented with its opposition brief.

$1,483,621 in attorneys' fees for 4962.9 hours expended by twenty-five timekeepers, and

$9,980.14 in expenses incurred on the Kansas litigation since August 25, 2010.

     The amount of fees is within the Court's discretion and the burden is on Boardwalk to

establish the reasonableness of its fee request.[50]  In determining reasonableness, the Court

considers the factors set forth in Rule 1.5(a) of the Kansas Rules of Professional Conduct:

> A lawyer's fee shall be reasonable.  The factors to be considered in
> determining the reasonableness of a fee include the following:
> (1) the time and labor required, the novelty and difficulty of the questions
> involved, and the skill requisite to perform the legal service properly;
> (2) the likelihood, if apparent to the client, that the acceptance of the
> particular employment will preclude other employment by the lawyer;
> (3) the fee customarily charged in the locality for similar legal services;
> (4) the amount involved and the results obtained;
> (5) the time limitations imposed by the client or by the circumstances;
> (6) the nature and length of the professional relationship with the client;
> (7) the experience, reputation, and ability of the lawyer or lawyers
> performing the services; and
> (8) whether the fee is fixed or contingent.[51]

No one factor should dominate under the Court's inquiry.[52]

     This Court is considered an expert in the area of attorneys' fees and may draw on and

apply its own knowledge in evaluating the claim.[53]  A fee applicant must submit "meticulous,

contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours

for which compensation is requested and how those hours were allotted to specific tasks."[54]

### 3.      Application of Reasonableness Factors to Fee Request

---

[50]*See Johnson v. Westhoff Sand Co., Inc.*, 135 P.3d 1127, 1135 (Kan. 2006).

[51]Kan. S. Ct. Rule 226, KRPC 1.5(a).

[52]*Johnson*, 135 P.3d at 1142.

[53]*Davis v. Miller*, 7 P.3d 1223, 1236 (Kan. 2000); *Link, Inc. v. City of Hays*, 997 P.2d 697, 704 (Kan. 2000).

[54]*Id*. (citation omitted).

> ### a.   The time and labor required; the novelty and difficulty of the questions involved; and the skill requisite to perform the legal service properly

Plaintiff's counsel seeks to recover for considerable time and labor spent on this litigation; 4962.9 hours since August 25, 2010.[55]  The Court finds that these hours are generally supported by meticulous, contemporaneous time records that show the Court how counsel's time was spent on specific tasks related to this lawsuit.  With the limited exceptions explained below, the Court finds that the number of hours spent on this litigation was reasonable given the time and labor involved, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal services in this case properly.  While the Court finds that certain limited reductions in the amount of hours spent on this litigation are in order, the Court finds no basis to deny the fee request in its entirety, as urged by State Auto.  Furthermore, the Court declines State Auto's invitation to reduce the hours expended across-the-board by 50%.  State Auto makes no attempt to explain how this proposal is proportionate to the deficiencies it identifies in its opposition brief.  And as explained below, taking into account the requisite factors and State Auto's objections to the reasonableness of the request, such a reduction is not warranted.  Instead, the Court has attempted to make certain targeted reductions in the hours requested by Boardwalk proportionate to the problems identified.

**Block-Billing**.  State Auto first objects to certain "block-billed" entries on the Husch Blackwell time sheets, arguing that it is impossible to determine the reasonableness of time spent on this litigation.  The Court disagrees.  "'Block billing' is the practice of lumping multiple tasks into a single entry of time such that the billing entry does not delineate how hours were allotted

---

[55]These hours do not include time Boardwalk has written off in the exercise of billing judgment.  *See* Doc. 390-4, Ex. 1-B.

to specific tasks."[56]  There is no rule in the Tenth Circuit, nor under Kansas law, that "mandat[es] reduction or denial of a fee request if the prevailing party submits attorney-records which reflect block-billing."[57]  But the Court may discount the requested hours if it finds that the records submitted do not allow the Court to determine how the hours were allotted to specific tasks and the reasonableness of that time.[58]  After reviewing the time records in this case, the Court cannot find that the limited block-billing utilized by the timekeepers in this matter mandates a reduction in hours requested by Boardwalk.  Importantly, Boardwalk enjoyed complete success in this matter sufficient to mandate an award of reasonable fees, so there are no fees that must be segregated for noncompensable time.[59]  Moreover, the Court does not find that the limited block-billing in this case prevents a reasonableness review.  These limited entries are sufficiently detailed for the Court to make a reasonableness determination.

**Redactions**.  State Auto argues similarly that redactions on Boardwalk's billing entries for attorney-client and work product protected information prevent the Court from determining whether those hours were reasonably spent on this litigation.  State Auto argues further that since members of Boardwalk have ownership interests in other business entities, the principal member of each being Mr. Fleischer, then State Auto has a legitimate concern that work on other matters may have been included in the billing records.  State Auto contends that Boardwalk waives attorney-client privilege and work product protection by putting the reasonableness of its fees

---

[56]*Wilhelm v. TLC Lawn Care, Inc.*, No. 07-2465-KHV, 2009 WL 57133, at *3 (D. Kan. Jan. 8, 2009).

[57]*Cadena v. Pacesetter Corp.*, 224 F.3d 1203, 1215 (10th Cir. 2000).

[58]*Id.*

[59]*See, e.g.*, *Paradigm Alliance, Inc. v. Celeritas Techs., LLC*, No. 07-1121-EFM, 2011 WL 251452, at *2 (D. Kan. Jan. 25, 2011) (discounting hours by 5% for block-billing where Court was required to segregate counsel's time).

and expenses at issue in this litigation.

As an initial matter, the Court sees no indication in the billing entries that any time was submitted by Boardwalk's attorneys for work performed on a different client matter. But it is true that when redactions make it impossible for the Court to "discern the appropriateness of counsel's work," a reduction in the fee request is warranted.[60] Here, the Court agrees that some of the redactions make it difficult to discern whether the hours spent on the described task was reasonable. For example, there are entries that describe a telephone conference, with no other information, or "analyze issues," with no further information. While the Court finds that its reasonableness inquiry is hampered as to some of the redacted entries, it also is unable to find that the problem is as widespread as that painted by State Auto in its response. Not every redacted entry is deficient; most make clear the nature of the work performed. For the years in question, the problematic redacted entries overwhelmingly pertain to the hours expended by either Ms. Byrd or Ms. Bowman. Therefore, the Court finds that a 1% reduction in the hours sought by these two timekeepers' hours is warranted.

**Clerical Work**. State Auto argues that the hours sought by Boardwalk include an unreasonable amount of clerical work performed by paralegals and other support staff, which should instead be absorbed as overhead. There is no question that paralegal fees are compensable when they are "for tasks which would otherwise have been performed by a lawyer."[61] However, "[p]urely clerical or secretarial tasks should not be billed at a paralegal

---

[60]*Bores v. Domino's Pizza LLC*, No. 05-2498 (RHK/JSM), 2008 WL 4755834, at *6 (D. Minn. Oct. 27, 2008) (collecting cases).

[61]*Erickson v. City of Topeka, Kan.*, 239 F. Supp. 2d 1202, 1208 (D. Kan. 2002).

rate, regardless of who performs them."[62]  Examples of compensable paralegal work include

"factual investigation, including locating and interviewing witnesses; assistance with

depositions, interrogatories, and document production; compilation of statistical and financial

data; checking legal citations; and drafting correspondence."[63]

Boardwalk's counsel argue that the items billed by paralegals and support staff are all

compensable because they involve tasks such as preparing counsel for depositions, filing

pleadings, managing deadlines, and preparing for trial.  But a review of the billing entries reveals

that some of the time sought that was expended by paralegals in this case involved clerical work

that should not be recovered as part of a fee request.  For example, there is significant paralegal

time spent updating, reviewing, organizing, or printing internal case files, which is not

compensable, particularly before 2011.  The Court has reviewed these billing entries and finds

that a reduction must be applied to certain paralegal time in this case.  The court will reduce the

hours expended by the two "core" paralegals who worked on this matter: Pam High from August

2010 through 2011 by 10%, and Deborah Ries by 5%, to account for the billing entries involving

noncompesable overhead.[64]  After this reduction, the Court finds that the hours expended by

paralegals and other support staff were reasonable and account for tasks that would have

otherwise been performed by a lawyer.

**Time spent preparing fee request**.  State Auto objects to Boardwalk recovering fees

---

[62]*Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288 n.10 (1989).

[63]*Id.*

[64]The Court notes more relative time spent on noncompensable time prior to the filing of the Complaint in this case, and generally more time spent by Ms. Ries on compensable work related to discovery, motions practice, and trial preparation.

spent "figuring out how to prepare its billing statements."  The only specific complaint by State Auto is about time spent researching whether the practice of block billing is problematic when submitting a fee request, and asks the Court to strike and disallow all time Boardwalk's attorneys spent "related to the recovery of its attorneys' fees in this matter."  But an award of reasonable attorneys' fees under K.S.A. § 40-908 includes time spent preparing and presenting the fee application.[65]  The most critical factor to consider is the amount of the fee awarded, so the "court should calibrate the fee to account for the degree of success obtained."[66]  As discussed in considering Boardwalk's request to supplement, the initial fee request considered at this time by the Court involves fees incurred from August 25, 2010 until August 1, 2014.  It would not include all time spent preparing the fee request, which was filed on September 8, 2014, although it certainly includes some time spent preparing the initial brief.  The research referenced by State Auto was conducted by an Associate, and Ms. Byrd reviewed this work.  It is reflected in only three billing entries from November 2013 for a total of about four hours.  The Court has reviewed these entries and finds that time spent is reasonable; of course Boardwalk would want to make sure its billing entries conformed to the standards in the jurisdiction given that it would be asserting a claim for such fees.

Partner Ryan Watson spent considerable time working on the fee application, 69.3 hours as of August 1, 2014.  Ms. Bowman also spent time reviewing, editing, and drafting the fee application; Ms. Byrd spent reasonably brief periods of time strategizing and reviewing other attorneys' work on this subject.  There are also nominal periods of time logged by other

---

[65]*Snider v. Am. Fam. Mut. Ins. Co.*, 298 P.3d 1120, 1131–32 (Kan. 2013).

[66]*Id.*

associates and paralegals preparing the fee request.  Given the requirement that the Court consider the degree of success obtained on the supplemental fee request, it must reduce the time spent defending an attorneys' fee award for the Missouri litigation.  The Court finds that a 30% reduction to Mr. Watson's hours submitted with this fee application will account for the degree of partial success obtained.  This reduction will take into account the degree of success obtained, while acknowledging that the majority of work expended on the fee application would have been expended even if Boardwalk sought fees for the Kansas litigation only.

**Redundant, unnecessary, or wholly unexplained tasks**.  State Auto claims that Boardwalk's hours were not reasonably expended because they engaged in redundant, unnecessary, or wholly unexplained tasks, citing review of case documents by multiple timekeepers, vaguely-worded interoffice communications, and time entries that do not reflect the matter being handled.  State Auto has attached Boardwalk's billing entries and highlighted in blue entries it alleges are redundant, unnecessary, or wholly unexplained.  In essence, State Auto complains that this case was "over-lawyered."

The Court has reviewed Boardwalk's time entries, as well as the highlighted version submitted by State Auto, and finds none to include "wholly unexplained tasks," as urged by State Auto.  The only entries that are difficult to discern are due to redactions, for which this Court has already made a reduction.  Likewise, the Court is unable to find that Boardwalk's counsel engaged in unnecessary or redundant work.  To be sure, several attorneys or other timekeepers contributed to final work product, whether it was correspondence or motions practice.  But the billing entries, when read in context, provide the Court with an understanding of the division of labor between the various timekeepers.  The Court agrees with Mr.

33

Thompson's assertion in his affidavit that the workload in this case was well-balanced between partners, associates, and non-lawyer support staff, and that counsel sought to avoid duplication of efforts.

**The time and labor involved; the novelty and difficulty of the questions involved**.

Numerous difficult legal issues were involved in this case, including but not limited to: (1) interpreting the coinsurance clause of the property damage policy given the Eighth Circuit's decision on law and ordinance costs; (2) applying the coinsurance provision to the property damage claim; (3) determining the values of the complex and Building 1; (4) interpreting and applying the parties' 2008 Stipulation; (5) determining the Period of Restoration under the business income loss policy; (6) determining the proper calculation of business income loss under the policy; (7) considering the impact of any interest earned by Boardwalk on the indemnity payments; (8) considering the parties' cooperation and notice obligations under the Policy; (9) determining the sufficiency of misrepresentation and fraud claims by State Auto. These issues were further complicated by the history of this dispute—how the Missouri litigation framed the matters before this Court.  While many of the legal issues were resolved through motions practice, the case proceeded to trial for the ultimate determination of liability and damages under the Policy.  These were complex and difficult issues and justified the considerable time invested by Boardwalk's counsel.

In addition to the complex and difficult issues involved in this matter, the Court finds that the strategies employed by State Auto necessitated more time expended by Boardwalk's counsel than would otherwise have been necessary in this case.  The Court agrees that State Auto's strategy of repeatedly asserting non-meritorious fraud and misrepresentation claims protracted

this litigation.  State Auto's original Answer merely quoted the fraud and misrepresentation Policy endorsement, without factual support.  After Boardwalk successfully moved to strike for failure to plead fraud with particularity, State Auto filed an Amended Answer asserting an affirmative defense and two counterclaims based on fraud.  The Court dismissed these counterclaims and defenses.

State Auto then changed its theory to allege fraud and misrepresentation based on entries in Boardwalk's tax returns, and asserted six new affirmative defenses and six new counterclaims. State Auto spent the better part of one day deposing Mr. Fleischer in March 2013, seeking facts to support its new fraud theories.  State Auto's new fraud theories required yet another motion to dismiss and supporting briefs, which the Court sustained.  State Auto sought reconsideration, which was denied.  Finally, within two weeks of trial, the night before the *in limine* conference, State Auto sought leave to file an amended answer and to continue the trial date, with the proposed answer growing from 71 pages to 88 pages, again on the basis of  fraud.[67]  State Auto claimed for the first time that Fleischer's 2007 deposition testimony during the Missouri litigation that Boardwalk had "invested" State Auto's partial payment was "inaccurate, incomplete and/or untrue."  The Court denied the requested amendment and continuance.  The timing of these motions suggests that State Auto sought to delay proceedings for both the Court and Boardwalk—attempting to assert new claims two weeks before trial.  Boardwalk correctly summarizes the myriad filings by Boardwalk necessitated by State Auto's repeated attempts to assert certain counterclaims and defenses despite contrary Court rulings: three motions to strike

---

[67]Doc. 305.

defenses;[68] two motions to dismiss counterclaims;[69] the opposition brief to State Auto's motion for judgment on the pleadings;[70] opposition briefs to State Auto's two motions for reconsideration;[71] and a motion for partial summary judgment.[72]

The dispositive motions and *Daubert* motions likewise involved many complicated legal issues, calling upon the Court to construe and apply the Policy language in light of court  rulings and a stipulation between the parties in the Missouri litigation.  While the parties presented issues that, once resolved, narrowed the factual questions at issue in this case, they did not eliminate the need for trial.  These motions prompted a summary judgment order that exceeded fifty pages in length.

The case proceeded to a seven-day jury trial, resulting in an overwhelmingly favorable verdict for Boardwalk.  The Court notes that by the time the case proceeded to trial, it had become all the more complex, as it has noted on the record.  Given the Missouri litigation, the summary judgment rulings, and the *in limine* rulings, the issues left for trial were narrow, but difficult.  The jury was called upon to review evidence amassed over a nine-year period of time, and to essentially calculate damages.  Moreover, as noted by Boardwalk, State Auto designated an exhaustive amount of exhibits, witnesses, and deposition designations for trial, most of which were not utilitzed.  This practice required substantial preparation by Boardwalk's attorneys;

---

[68]Docs. 10, 11, 63, 64, 127, 128.

[69]Docs. 63, 64, 127, 128

[70]Doc. 47.

[71]Docs. 47, 209.

[72]Docs. 214, 215.

some of which turned out to be fruitless.[73]

**Skill necessary to litigate the matter properly**.  The Court also finds that the hours spent on this litigation were justified based on the skill necessary to litigate this matter properly. While the Court cannot award fees expended on the Missouri litigation, it is clear that having the same law firm represent Boardwalk in both cases was prudent.  Given the legal rulings and factual development from the prior case that were relevant to shaping the issues in this case, Boardwalk justifiably retained counsel that was familiar with the prior litigation and was responsible for perfecting and collecting the insurance claims on behalf of Boardwalk in between the two lawsuits.  The Court finds that Boardwalk certainly saved time and money by retaining the same law firm that by 2011 was intimately familiar with the facts and legal issues involved in this case.  As described below, the Court finds that the attorneys in this case were highly qualified to litigate this matter.

> **b.     The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer**

There is no evidence in the record that the Husch Blackwell law firm turned away other work because of its work on the instant matter, however, given the effort and manpower expended on this case, it appears clear that these timekeepers worked on this case at the expense of other work.  Nonetheless, the Court does not view this factor as relevant to determining the requested fees in this matter.  The Court will consider, in conjunction with the other factors, whether the "total fee is reasonable for the work required."[74]

---

[73]For example, despite naming eleven witnesses on its Final Witness List, State Auto called one witness. Despite marking 102 exhibits, State Auto offered only 28.

[74]*Moore v. St. Paul Mercury Ins. Co.,* 989 P.2d 294, 295 (Kan. Ct. App. 1994).

###### c.   Fee customarily charged in the locality for similar legal services

Under this factor, the Court considers the rates of the attorneys and support staff who assisted Boardwalk in this case —33 timekeepers in all since 2010.  In examining the hourly rate, the court is to refer "to the prevailing market rates in the relevant community."[75]  "The first step in setting a rate of compensation for the hours reasonably expended is to determine what lawyers of comparable skill and experience practicing in the area in which the litigation occurs would charge for their time."[76]  In making this determination, if the court does not have before it adequate evidence of prevailing market rates, the court may, in its discretion, "use other relevant factors, including its own knowledge, to establish the rate."[77]

The Court has before it substantial evidence from Boardwalk that its counsel's rates are in line with the prevailing market rates for lawyers of comparable skill and experience practicing in the Kansas City area.  Michael Thompson's affidavit sets forth the hours and rates for each timekeeper chronologically, with explanations about the core teams that worked on this case during various periods dating back to 2006, and provides explanations for other non-core timekeeper contributions.[78]  Kevin Bielawski's affidavit sets forth his extensive experience and personal participation in setting rates for the firm,[79] and includes PriceWaterhouseCoopers' Billing Rate and Associate Salary Surveys ("BRASS") from 2007–14 to which the Husch

---

[75]*Blum v. Stenson*, 465 U.S. 886, 895 (1984).

[76]*See Case v. Unified School Dist. No. 233*, 157 F.3d 1243, 1256 (10th Cir. 1998).

[77]*Lippoldt v. Cole*, 468 F.3d 1204, 1225 (10th Cir. 2006) (citing *Case*, 157 F.3d at 1257).

[78]Doc. 390, Ex. 1.

[79]Doc. 390, Ex. 2.

Blackwell firm subscribes and on which Bielawski relied in setting the firm's rates during the years in question.[80]  Ernest Fleischer, who is both the managing member of Boardwalk and an experienced attorney in the Kansas City area, attested that the standard hourly rates charged by Boardwalk's attorneys are reasonable for the type and quality of work performed.  Many of the attorneys who worked on this case state by affidavit that their time was billed at their standard billing rate(s), which is a reasonable hourly rate.[81]  Boardwalk submits fee awards in several cases in Kansas and Missouri involving Husch Blackwell attorneys and other comparable fee requests, approving rates in line with those sought in this case.[82]

State Auto contends that the hourly rates charged by Boardwalk's attorneys were unreasonable for the following reasons: (1) they are higher than the average rate set forth in *Missouri Lawyers Weekly* for 2012; and (2) the fee awards cited by Boardwalk are not probative because they do not involve insurance litigation.  Attaching four attorney affidavits to the motion for leave out of time, State Auto also belatedly attempted to establish that the standard rates for insurance litigation in the Kansas City area are far lower than those requested by Boardwalk's attorneys.

As for State Auto's reliance on *Missouri Lawyer's Weekly*, it does not attach this report to its brief.  Boardwalk asserts, and the Court's research confirms, that this publication determined that "[t]he average Missouri attorneys' rate for 2012 is $339," which is an average of

---

[80]Doc. 390-8, Ex. 2-G.

[81]Doc. 387, Exs. 4–17.

[82]Doc. 387, Exs. 48, 49, 50, 51, 52.

all attorney time regardless of experience and type of firm.[83]  This information provides the

Court with no guidance about the specific rates charged by attorneys with various levels of

experience in the Kansas City market, or in the field of insurance litigation.  And as Boardwalk

points out, its attorneys' "blended rate" is in line with this average.[84]

      While State Auto is correct that the fee awards from other cases provided by Boardwalk

do not involve insurance litigation, the Court does find these fee awards to be indicative of the

fees customarily approved by other courts for these attorneys and those with comparable skill

and experience in the Kansas City market.  The language in these decisions approving such rates

is not specific to the type of case these attorneys litigated.

      Moreover, even considering the affidavits belatedly offered by State Auto on the

reasonableness of the rates, the Court does not find that they dictate a rate reduction.  First, the

Court notes that all of the affiants appear to specialize in insurance defense work.[85]  But

Boardwalk does not seek to recover fees expended on insurance defense, a practice that is known

to enjoy lower rates.[86]  Boardwalk seeks to recover its fees expended in prosecuting a claim for

insurance coverage.  And this case was not a run-of-the mill insurance coverage dispute; it was a

complex commercial insurance case that proceeded to trial on novel issues of fact and law.

---

[83]Heather Cole, Billing Rates 2012: Partners in Kansas City make more than those in St. Louis, MISSOURI LAWYERS MEDIA , 8/6/12 Mo. Law. Media, at *1 (Aug. 6, 2012).

[84]See Doc. 390-7, Ex. 2 ¶ 23.

[85]Doc. 420, Ex. A (web profiles from affiants' websites listing insurance defense as specialties for Mr. Barrett and Mr. Waldeck and listing several insurance companies as clients for Mr. Moulder's law firm).  Mr. Cockerham has been lead counsel for State Auto in the Missouri litigation and this case.  Doc. 414-1.

[86]See, e.g., Rupert ex rel. Rupert v. Sec'y of Dep't of Health & Human Servs., 55 Fed. Cl. 293, 300 (2003) ("The contractual nature of the relationship between insurance defense attorneys and insurance companies tends to lower the rates paid to the former. . . .  The negotiation that takes place therefore would not support a finding that the rates insurance companies pay defense lawyers represent a purely market-driven rate for those services.").

Second, the affidavits do not point this Court to any sort of consensus on the reasonable rates charged by insurance litigators in Kansas City. Mr. Cockerham attests that reasonable rates for an insurance litigator would be between $135 and $195 per hour; between $75 and $95 for paralegals. He states that he has previously sought fees in the insurance cases he litigated for rates between $135 and $185. He does not indicate the rates that he charged State Auto in this case.[87] Todd Barrett attests that in his experience doing insurance trial and appellate work, an attorney hourly rate of $135–250 is reasonable; $60–100 for paralegals. Michael Moulder attests to rates in the Kansas City area for insurance cases. He states that for a partner, a reasonable hourly rate would be $250–275, a reasonable hourly rate for an associate would be $200–225, and for a paralegal, $80–100. None of these affiants specify the type of insurance litigation nor the time period for which the proposed reasonable rates apply. And of course, these rates are far lower than the *Missouri Lawyers Weekly* average that State Auto cited in its response brief.

In contrast, the BRASS survey that Boardwalk's counsel relies upon in setting rates is supported by a survey of actual market rates reported by attorneys in Missouri. Mr. Bielawski sets forth in his affidavit a detailed explanation about how the survey is conducted, as well as a summary of the Husch Blackwell rates as compared to the surveyed rates. While a few timekeepers' rates are slightly above and a few slightly below the rates provided in this survey, the rest are all within the billing rate ranges identified in the survey. In addition to representing a sampling of Missouri and regional timekeeper rates for each of the relevant years in question, the survey breaks down rates by years of experience, an important factor in determining reasonable

---

[87]The Court does not find terribly relevant Mr. Cockerham's rate in the *Executive Affiliates* matter, a products liability case litigated in the Eastern District of Missouri. While his $595 hourly rate is certainly suggestive that his rate is higher than those of the Boardwalk attorneys in this case, it involved a contingent fee arrangement. *See* Doc. 402, Ex. 2.

rates.  The Court finds this detailed information more relevant and reliable than the evidence produced by State Auto as to the reasonableness of Husch Blackwell's rates.

The Court has reviewed all of the evidence submitted in support of the standard rates charged by the Boardwalk attorneys and support staff and finds that they are reasonable for the Kansas City market in light of the complexity and length of this case, and the high quality of representation involved.

<strong>d.    The amount involved and the results obtained</strong>

In this case, the jury awarded Boardwalk all of the relief sought and the Court has awarded prejudgment interest.  Boardwalk has recovered over $4.5 million altogether.  Boardwalk's request of $1,460,969.50 since August 25, 2010, is approximately 30% of the Amended Judgment.  The Court finds this amount reasonable in relation to the significant amount of damages awarded in this matter.

The Court further agrees with Boardwalk that the results obtained further substantiate the reasonableness of the award.  State Auto took the position that coinsurance applied in this case to the extent that Boardwalk owed State Auto partial reimbursement of the prior indemnity payment on the replacement cost claim.  It argued further that there was no coverage on the business income claim based on its affirmative defense that Boardwalk failed to cooperate.  The jury rejected each of these grounds for denying Boardwalk's claims.  Boardwalk's ability to recover on both claims and defeat these affirmative defenses are attributable to the legal positions taken by and trial acumen of Boardwalk's attorneys in this case.

<strong>e.    The time limitations imposed by the client or by the<br>circumstances</strong>

The Court does not find this to be a significant factor in determining a reasonable fee.

42

There is no evidence in the record of time limitations imposed by Boardwalk or the circumstances.  To the contrary, the Court has set forth in this and other opinions the significant delay caused by State Auto's litigation strategy.

        **f.**      **The nature and length of the professional relationship with the client**

This case involved a lengthy relationship between Boardwalk and its attorneys that spanned a nine-year period when considering the precursor Missouri litigation.  As previously stated, this was a complex, multi-million dollar insurance case that was made even more complicated in the Kansas litigation by the preexisting contract interpretations and stipulations of the parties in the Missouri litigation.  The Court also gives weight to Mr. Fleischer's affidavit, in which he attests to his intimate involvement in this litigation, from participating in legal strategy to assisting with motions practice.  Mr. Fleischer states that he expended hundreds of hours on this litigation, none of which are claimed on Boardwalk's fee request.  Given the nature and length of the attorney-client relationship in this matter, Boardwalk's fee request is reasonable.

        **g.**      **The experience, reputation, and ability of the lawyer or lawyers performing the services**

Mr. Thompson summarizes in his affidavit the facts relevant to the Court's consideration of this reasonableness factor.  He explains that at all times during the course of the two cases, Husch Blackwell utilized a "core litigation team," comprised of four to five timekeepers: one senior partner, one junior partner, one associate, and one paralegal.  When the Kansas litigation began, the core litigation team was comprised of (1) Mr. Thompson, a senior partner with more than thirty-five years of experience handling complex commercial litigation; (2) Kirsten Byrd, a

junior partner with twelve years of experience, much of which was in insurance law; (3) Stacey Bowman, the primary associate on this case from September 2009 to the present, with three years of experience; and (4) Deborah Ries, a paralegal with eleven years of experience.  In 2014, Mr. William A. Lynch joined the team and assumed the role as lead trial counsel.  He is a fellow in the American College of Trial Lawyers, and has more than forty years of experience.

Husch Blackwell utilized additional timekeepers during the course of the Kansas litigation to assist with other discrete tasks: (1) a senior manager of information assisted with locating certain legal research at a cost lower than that of an associate; (2) several associates assisted in researching issues in the case, gathering documents for production, and preparing or responding to motions; (3) paralegals with specialized training assisted in calculating and docketing court deadlines and handled e-discovery; (4) attorneys with specialized expertise were consulted on insurance and tax issues on a limited basis; and (5) several associates, paralegals, and litigation support personnel contributed to pretrial preparation.  Boardwalk submitted affidavits for timekeepers who spent any significant time on this case, attesting to their qualifications, rates, and time spent on these matters.

The Court has thoroughly reviewed all of this evidence and has presided over this case from its inception, witnessing the abilities of Boardwalk's attorneys first-hand.  The Court finds that Boardwalk's attorneys enjoy outstanding professional reputations and that they were highly qualified to prosecute and try this complex and lengthy insurance matter.

### h.      Whether the fee is fixed or contingent

Boardwalk submits that the fee in this case was based on a contractual agreement for payment by standard hourly rates.  Mr. Fleischer believes that the standard hourly rates for the

44

timekeepers in this case are reasonable for the type and quality of work performed and the experience level of each person.  Mr. Fleischer attests that all fees and expenses incurred in this matter to date have been fully paid.  He has not objected to any of the fees or expenses, believing that they were warranted by the volume and necessity of the work involved.  The fact that these fees were paid in full is probative of reasonableness.[88]

### 3.   Reasonable Expenses

Boardwalk seeks $9,980.14 in non-taxable expenses incurred since August 25, 2010. The expense categories sought include charges for document reproduction, scanning, loading electronic discovery images for review, CD creation and duplication, printing, postage, telephone, air courier, Pacer, mileage and travel, messenger services, computer assisted research, and transcripts.  State Auto does not object to any of the items included in this request, and the Court finds that all expense items are reasonable, for a total award of $9,980.14.

### 4.   Total Award

The Court has considered all of the reasonableness factors set forth in Rule 1.5(a), as well as the extensive submissions by both parties, and finds Boardwalk's requested hours and rates are reasonable as modified by the Court.  Plaintiff is therefore awarded the following reasonable attorney fees and expenses: $1,460,969.50 in reasonable attorneys' fees, and $9,980.14 in expenses.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff Boardwalk's Motion for Attorneys' Fees (Doc. 349) is **granted in part and denied in part for a total award of $1,470,949.64 in reasonable attorneys' fees and  expenses**.  The Clerk is directed to file a

---

[88]*See Mr. Elec. Corp. v. Khalil*, No. 06-2414-CM, 2013 WL 5651398, at *6 (D. Kan. Oct. 16, 2013).

Second Amended Judgment to reflect this award.

**IT IS FURTHER ORDERED** that State Auto's Motion for Leave to File Affidavits in Support of its Opposition to the Motion for Attorneys' Fees and Expenses Out of Time (Doc. 414) is **denied**.

**IT IS FURTHER ORDERED** that Boardwalk's Motion for Leave to Supplement its Motion for Award of Reasonable Fees and Expenses (Doc. 411) is **denied without prejudice to refiling**.  Boardwalk may file a single supplemental fee request within 21 days of this Order. State Auto may respond to the supplemental fee request within 14 days.  No reply shall be filed.

Dated: March 2, 2015

 S/ Julie A. Robinson_____
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE